73 A.3d 565

COMMONWEALTH of Pennsylvania, Appellee

v.

Mary A. DYARMAN, Appellant.

Supreme Court of Pennsylvania.

Argued Nov. 27, 2012.

Decided Aug. 20, 2013.

Joshua Auriemma, Esq., Bryan Eugene DePowell, Jr., Esq., McShane Firm, LLC, for Pennsylvania Association for Drunk Driving Defense Attorneys, Amicus Curiae.

Bradley Steven Bridge, Esq., Owen W. Larrabee, Esq., Defender Association of Philadelphia, for Defender Association of Philadelphia, Amicus Curiae.

Drew Francis Deyo, Esq., Karl Ernst Rominger, Esq., Carlisle, Rominger & Associates, for Mary A. Dyarman.

David James Freed, Esq., Charles John Volkert, Jr., Matthew Peter Smith, Cumberland County District Attorney's Office, Joshua Merrill Yohe, Cumberland County Court, for Commonwealth of Pennsylvania.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice EAKIN.

We granted review to determine whether the admission of accuracy and calibration certificates for breath test machines without testimony from the individual who performed the testing and prepared the certificates violated appellant's Sixth Amendment right to confrontation. Under the circumstances of this case, we hold appellant's Sixth Amendment right was not violated, and affirm the order of the Superior Court.

On November 28, 2009, Corporal James Patterson stopped a vehicle driven by appellant. Corporal Patterson determined appellant was under the influence of alcohol; he arrested and transported her to the DUI booking station at the Cumberland County Prison. Upon arrival, Corrections Officer Rodney Gsell took over processing and administered a breath test to determine appellant's blood alcohol content (BAC). When the test indicated appellant had a BAC of .117%, she was formally charged with two counts of driving under the influence of alcohol (DUI). *See* 75 Pa.C.S. §§ 3802(a)(1) (general impairment), 3802(b) (high rate of alcohol).

On October 29, 2010, at a bench trial, the Commonwealth presented the testimony of Officer Gsell, and moved to admit the calibration and accuracy certificates [1] for the device used to test appellant's BAC. *See* 67 Pa.Code §§ 77.25(c) (certificate of accuracy), 77.26(d) (certificate of calibration). Appellant objected, arguing admission of the certificates would violate her rights under the Confrontation Clause of the Sixth Amendment,[2] as delineated in *Melendez–Diaz v. Massachu-*

---

1. The Superior Court refers to these documents as calibration and accuracy "logs," *see Commonwealth v. Dyarman*, 33 A.3d 104, 105 (Pa.Super.2011), but because both the Pennsylvania Code and counsel during trial and appeal used the term "certificate," we do the same here.

2. The Sixth Amendment's Confrontation Clause provides "[i]n all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him[.]" U.S. Const. amend. VI.

*setts,* 557 U.S. 305, 310–11, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), because Officer Gsell was not the individual who performed the calibration and accuracy tests. The trial court overruled the objection and thereafter found appellant guilty of both counts of DUI. After sentencing, appellant filed a post-sentence motion, again claiming the admission of the calibration and accuracy certificates violated her rights under the Confrontation Clause. The trial court denied the motion, and appellant appealed to the Superior Court.

A Superior Court panel unanimously affirmed, explaining the crucial question for Confrontation Clause purposes was whether the statements contained within the calibration and accuracy certificates were "testimonial" in nature. *Dyarman,* at 107–08. Relying on the United States Supreme Court's decisions in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Melendez–Diaz,* as well as its own decision in *Commonwealth v. Barton–Martin,* 5 A.3d 363 (Pa.Super.2010), *appeal denied,* 612 Pa. 695, 30 A.3d 486 (2011) (table),[3] the Superior Court held the statements at issue here (*i.e.,* the certificates) were not "testimonial." It noted that in *Crawford, Melendez–Diaz,* and *Barton–Martin,* "the statements were prepared in anticipation of litigation of a particular case, and were necessary to prove an element of the crime charged." *Dyarman,* at 107. Here, conversely, the certificates "were not created in anticipation of [a]ppellant's particular litigation, or used to prove an element of a crime for which [a]ppellant was charged"; rather, they "were admitted into evidence to establish the chain of custody and accuracy of the device used to test [a]ppellant's BAC[.]" *Id.,* at 108. Accordingly, the Superior Court concluded "although relevant evidence, the [certificates] were not 'testimonial' for purposes of the protections afforded by the [C]onfrontation [C]lause, as contemplated by *Crawford, Melendez–Diaz,* and *Barton–Martin.*" *Id.*

**3.** *Barton–Martin* involved the admission of a lab report indicating BAC test results without the in-court testimony of the analysts who prepared the report. *Id.,* at 366.

As further support for this conclusion, the Superior Court looked to dicta in *Melendez–Diaz,* wherein the United States Supreme Court majority suggested:

> [W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody . . . or accuracy of the testing device, must appear in person as part of the prosecution's case. While the dissent is correct that "[i]t is the obligation of the prosecution to establish the chain of custody," this does not mean that everyone who laid hands on the evidence must be called. . . . It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony is introduced must (if the defendant objects) be introduced live. Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records.

*Melendez–Diaz,* at 311 n. 1, 129 S.Ct. 2527 (internal citations omitted; emphasis in original).[4]

Based on the foregoing, the Superior Court determined the certificates were properly admitted into evidence, and appellant was not entitled to relief. *Id.* (citing Pa.R.E. 803(6) (business records exception); 75 Pa.C.S. § 1547 (relating to chemical testing to determine amount of alcohol)).

Appellant argues the Superior Court's decision directly contravenes *Melendez–Diaz* because the Commonwealth attempted to lay a foundation for the admission of appellant's BAC test results by introducing the calibration and accuracy certificates without presenting the testimony of the technician who performed the tests. Appellant claims, just as in *Melendez–Diaz,* the certificates were an affidavit which "belong to the core class of testimonial statements as expressed by the Supreme Court of the United States in *Crawford* [ ] and expounded upon by that [C]ourt in *Melendez–Diaz.*" Brief for Appellant, at 15 (internal quotation marks omitted). Further, appellant contends the *dicta* in *Melendez–Diaz's* footnote should not control the outcome of this case because the

---

4. The Superior Court's opinion omitted the final two sentences of this quotation. *See Dyarman,* at 108.

Supreme Court qualified its statement, that not all persons whose testimony establishes the accuracy of a testing device must appear in person, by declaring " 'what testimony is introduced must (if the defendant objects) be introduced live.' " *Id.*, at 92, 73 A.3d at 567–68 (quoting *Melendez–Diaz*, at 311 n. 1, 129 S.Ct. 2527 (emphasis in original)).

In *Melendez–Diaz*, the Supreme Court addressed whether certificates "reporting the results of forensic analysis which showed that material seized by the police and connected to the defendant" were "testimonial" for purposes of the Confrontation Clause. *Melendez–Diaz*, at 307, 129 S.Ct. 2527. The Court noted:

The Sixth Amendment to the United States Constitution ... provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In *Crawford*, after reviewing the Clause's historical underpinnings, we held that it guarantees a defendant's right to confront those "who 'bear testimony' " against him. [*Crawford*, at 51, 124 S.Ct. 1354]. A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. *Id.*, at 54 [124 S.Ct. 1354].

Our opinion described the class of testimonial statements covered by the Confrontation Clause as follows:

"Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

[*Crawford,* at 51–52, 124 S.Ct. 1354]. (internal quotation marks and citations omitted).

*Id.,* at 309–10, 129 S.Ct. 2527.

Applying these principles to the matter at bar, the Supreme Court stated:

There is little doubt that the documents at issue in this case fall within the "core class of testimonial statements" thus described. Our description of that category mentions affidavits twice. The documents at issue here, while denominated by Massachusetts law "certificates," are quite plainly affidavits: "declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths." Black's Law Dictionary 62 (8th ed.2004). They are incontrovertibly a " 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " [*Crawford,* at 51, 124 S.Ct. 1354]. The fact in question is that the substance found in the possession of Melendez–Diaz and his codefendants was, as the prosecution claimed, cocaine—the precise testimony the analysts would be expected to provide if called at trial. The "certificates" are functionally identical to live, in-court testimony, doing "precisely what a witness does on direct examination." *Davis v. Washington,* 547 U.S. 813, 830 [126 S.Ct. 2266, 165 L.Ed.2d 224] (2006) (emphasis deleted).

Here, moreover, not only were the affidavits " 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,' " [*Crawford,* at 52, 124 S.Ct. 1354], but under Massachusetts law the *sole purpose* of the affidavits was to provide "prima facie evidence of the composition, quality, and the net weight" of the analyzed substance[.] We can safely assume that the analysts were aware of the affidavits' evidentiary purpose, since that purpose—as stated in the relevant state-law provision—was reprinted on the affidavits themselves.

*Id.,* at 310–11, 129 S.Ct. 2527 (emphasis in original) (citations omitted).

■ It is apparent *Melendez–Diaz* does not compel the result appellant suggests. As the Superior Court properly observed, the instant matter is distinguishable from *Melendez–Diaz* because the calibration and accuracy certificates did not establish an element of the offense, and were prepared without knowledge of any particular case or for use in any particular trial. Unlike *Melendez–Diaz*, the certificates at issue here did not provide any information regarding appellant's BAC or even refer to her. They merely certified the reliability of the device. The certificates were prepared weeks before the November 28, 2009 offense; the calibration certificate was issued October 20, 2009, and the accuracy certificate was issued November 9, 2009. *See* Breathtesting Device Calibration Certificate, 10/20/09, at 1; Breathtesting Device Accuracy Certificate, 11/9/09, at 1. In light of the foregoing, we conclude the calibration and accuracy certificates were nontestimonial in nature because they were not prepared for the primary purpose of providing evidence in a criminal case, and their admission into evidence did not violate appellant's Confrontation Clause rights.[5]

We also find appellant's challenge to the certificates does not involve confrontation issues under *Melendez–Diaz*; rather,

---

**5.** To the extent appellant argues the certificates were "testimonial" simply because they were in the form of an affidavit, her argument is without merit. *See* Brief for Appellant, at 15. This position appears related to Justice Thomas's view of what constitutes "testimonial" statements. "On his view, the Confrontation Clause regulates only the use of statements bearing indicia of solemnity." *Williams v. Illinois*, 567 U.S. ——, ——, 132 S.Ct. 2221, 2276, 183 L.Ed.2d 89 (2012) (Kagan, J., dissenting) (internal quotation marks and citations omitted). This position, however, is not the position of the Supreme Court. *See id.*, at 2276–77.

Additionally, to the extent appellant argues *Melendez–Diaz's dicta* stated documents introduced to establish equipment maintenance must be accompanied by live, in-court testimony, she is mistaken. The need for live, in-court testimony applies to testimonial statements, assuming a defendant timely and properly objects to their admission. By stating such records may be nontestimonial in nature, the Supreme Court acknowledged they may not be of a constitutional dimension, since the Confrontation Clause applies only to testimonial statements. *Davis*, at 821, 126 S.Ct. 2266 (citation omitted) ("Only [testimonial statements] cause the declarant to be a 'witness' within the meaning of the Confrontation Clause.").

it concerns the weight to be accorded to the test results. Pursuant to 75 Pa.C.S. § 1547(c), "tests ... conducted by qualified persons using approved equipment, shall be admissible in evidence." *Id.* Once the Commonwealth presented evidence the test was performed by a "qualified person," on an "approved" device, which had been calibrated and inspected for accuracy within the period of time and in a manner in conformity with relevant regulations, the trial court properly admitted the test results. *See id.,* § 1547(c)(1); [6] *see also* N.T. Trial, 10/29/10, at 37–38. Appellant could have challenged the accuracy of the device by calling the author of the certificates or offering other evidence to show flaws in the device, but any proffered evidence would have only affected the weight of this evidence, not its admissibility. Had there been an actual concern about the calibration or accuracy testing, a pre-trial motion was available to address all such matters.

The Superior Court's decision may be read as implying the calibration and accuracy certificates qualified as business records and, as such, were not subject to the Confrontation Clause. *Dyarman,* at 108 ("[A]dmission of the [certificates] based, in this case, upon the business records exception to the

6. Section 1547(c)(1) provides:

Chemical tests of breath shall be performed on devices approved by the Department of Health using procedures prescribed jointly by regulations of the Departments of Health and Transportation. Devices shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation. For purposes of breath testing, a qualified person means a person who has fulfilled the training requirement in the use of the equipment in a training program approved by the Departments of Health and Transportation. A certificate or log showing that a device was calibrated and tested for accuracy and that the device was accurate shall be *presumptive evidence* of those facts in every proceeding in which a violation of this title is charged.

*Id.* (emphasis added). Here, the Commonwealth presented evidence the test was conducted by a qualified person (Officer Gsell), *see* N.T. Trial, 10/29/10, at 32, on an approved device (Intoxilyzer 5000EN), *id.* at 33; *see also* 39 Pa. Bull. 5207 (August 29, 2009)—a Type–A device, *see* 29 Pa. Bull. 708 (February 6, 1999); 67 Pa.Code § 77.22; N.T. Trial, 10/29/10, at 40–41, calibrated and inspected in accordance with relevant regulations. *See* 67 Pa.Code §§ 77.25, 77.26; *see also* N.T. Trial, 10/29/10, at 36–40; Breathtesting Device Calibration Certificate, 10/20/09, at 1; Breathtesting Device Accuracy Certificate, 11/9/09, at 1.

hearsay rule ... did not violate [a]ppellant's Sixth Amendment right to confrontation."). With such a reading, we must disagree.

In *Melendez–Diaz*, the Supreme Court noted: "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez–Diaz*, at 324, 129 S.Ct. 2527. Thus, whether business records are subject to the Confrontation Clause depends on the purpose of the evidence (*i.e.*, whether the evidence was made for the " 'purpose of establishing or proving some fact' " relevant to criminal prosecution). *Id.*, at 310, 129 S.Ct. 2527 (quoting *Crawford*, at 51, 124 S.Ct. 1354). To the extent the Superior Court's decision may be read as implying business records are always nontestimonial, it is incorrect.[7]

Similarly, the Superior Court's decision might be read as implying accuracy and calibration certificates are nontestimonial based on the language of a footnote in *Melendez–Diaz*. *See Melendez–Diaz*, at 311 n. 1, 129 S.Ct. 2527. Several courts have considered the issue since the Supreme Court issued its decision in *Melendez–Diaz*, and these courts have almost uniformly agreed calibration records are nontestimonial because their primary purpose is not to provide evidence in a criminal case, but to assure the reliability of the device used. *See, e.g., United States v. Forstell*, 656 F.Supp.2d 578, 581 (E.D.Va.2009); *People v. Pealer*, 20 N.Y.3d 447, 962 N.Y.S.2d 592, 985 N.E.2d 903, 907 (2013); *Matthies v. State*, 85 So.3d 838, 844 (Miss.2012); *McCarthy v. State*, 285 P.3d 285, 289 (Alaska Ct.App.2012). The footnote in *Melendez–Diaz* does not create a "blanket rule of admissibility for any hearsay

7. *See also United States v. Cameron*, 699 F.3d 621, 640 (1st Cir.2012) ("[E]ven if the records at issue here are business records, as the government argues, we must still determine whether or not they are testimonial.") (citing *United States v. Pursley*, 577 F.3d 1204, 1223 (10th Cir.2009), *cert. denied*, 558 U.S. 1130, 130 S.Ct. 1098, 175 L.Ed.2d 915 (2010)).

evidence relevant to establishing the accuracy of a testing device. It merely state[s] that such evidence will not be deemed testimonial in every case." *Matthies*, at 846–47 (Chandler, J., dissenting) (citing *Melendez–Diaz*, at 311 n. 1, 129 S.Ct. 2527). To the extent the Superior Court's decision so implies, it is incorrect.

The Superior Court's decision also highlights the need for guidance in this matter, especially in light of the Supreme Court's most recent decision in *Williams*. Before addressing *Williams*, however, a short background is necessary.[8]

In *Crawford*, a case involving custodial statements, the Supreme Court held "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford*, at 68–69, 124 S.Ct. 1354. Specifically, "[w]here testimonial evidence is at issue, ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.*, at 68, 124 S.Ct. 1354. The Supreme Court, however, did not provide a specific definition of the type of testimonial statements covered by the Confrontation Clause. As noted above, the Supreme Court identified three possible formulations of the "core class" of testimonial material covered by the Confrontation Clause. Because the statements at issue in *Crawford* were "testimonial under any definition," *id.*, at 61, 124 S.Ct. 1354 the Supreme Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.' " *Id.*, at 68, 124 S.Ct. 1354.

In *Davis*, a case involving statements made to a 911 operator in an emergency situation, the Supreme Court developed the "primary purpose" test to evaluate out-of-court statements which do not squarely fall into the core class. In *Davis*, the Supreme Court distinguished between two types of statements that can be made to a police officer: one category of state-

8. *See generally Commonwealth v. Allshouse*, 614 Pa. 229, 36 A.3d 163 (2012); *see also Cameron*, at 646–47; *People v. Leach*, 366 Ill.Dec. 477, 980 N.E.2d 570 (2012); *State v. Kennedy*, 229 W.Va. 756, 735 S.E.2d 905 (2012).

ments is nontestimonial, the other is testimonial. The Supreme Court articulated the distinction as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, at 822, 126 S.Ct. 2266.[9]

Subsequently, the Supreme Court reiterated the applicability of the "primary purpose" test to scientific reports. In *Melendez–Diaz*, a case dealing with "certificates of analysis" issued by a state forensic analyst, the Supreme Court noted the certificates were "functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination." *Melendez–Diaz*, at 310–11, 129 S.Ct. 2527 (quoting *Davis*, at 830, 126 S.Ct. 2266) (internal quotation marks omitted). The Supreme Court emphasized "the *sole purpose* of the [certificates] was to provide prima facie evidence of the composition, quality, and the net weight of the analyzed substance[.]" *Id.*, at 311, 129 S.Ct. 2527 (emphasis in original) (internal quotation marks omitted).[10]

In *Michigan v. Bryant*, 562 U.S. ——, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011), a case dealing with statements made by the victim to police officers who responded to a dispatch, the Court reiterated the "primary purpose" test first announced in *Davis*. After *Bryant*, this Court summarized the test as follows:

**9.** In *Davis*, the Supreme Court limited the holding to interrogations because the statements at issue were made during police interrogations. "This is not to imply, however, that statements made in the absence of any interrogation are necessarily nontestimonial." *Id.*, at 822 n. 1, 126 S.Ct. 2266.

**10.** *See also id.*, at 323, 129 S.Ct. 2527 (stating analysts *"create[d]* a record for the sole purpose of providing evidence against a defendant"*) (emphasis in original).

[I]n analyzing whether a statement is testimonial, and, therefore, subject to the protections of the Confrontation Clause under *Crawford*, a court must determine whether the primary purpose of the interrogation was to establish or prove past events relevant to a later criminal prosecution. In making the determination as to the primary purpose of an interrogation, a court first should determine whether the interrogation occurred during the existence of an ongoing emergency, or what was perceived to be an ongoing emergency. Although the existence—actual or perceived—of an ongoing emergency is one of the most important factors, this factor is not dispositive because there may be other circumstances, outside of an ongoing emergency, where a statement is obtained for a purpose other than for later use in criminal proceedings. In determining the primary purpose of an interrogation, a court must also objectively evaluate the circumstances surrounding the interrogation, including the formality and location, and the statements and actions of both the interrogator and the declarant.

*Allshouse*, at 175–76.

██ In *Bullcoming v. New Mexico*, 564 U.S. ——, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), a case involving a forensic laboratory report of defendant's blood, the Supreme Court reiterated the "primary purpose" test,[11] holding the laboratory report certifying the defendant's BAC was "testimonial" and failure to call the analyst who administered and certified the test was a violation of the defendant's Sixth Amendment confrontation rights.

In *Williams*, the Court further refined the "primary purpose" test.[12] A plurality of the Supreme Court found a DNA

11. A statement is testimonial if "made for the purpose of establishing or proving some fact in a criminal proceeding." *Id.*, at 2716 (internal quotation marks omitted) (citing *Melendez–Diaz*, at 310, 129 S.Ct. 2527).

12. Pre-*Williams* case law appears to stand for the principle "a statement triggers the protections of the Confrontation Clause when it is made with the primary purpose of creating a record for use at a later criminal trial." *United States v. James*, 712 F.3d 79, 96 (2d Cir.2013) (citations omitted).

report relied upon by a testifying expert was not "testimonial" for purposes of the Confrontation Clause because the report was not prepared for the "primary purpose of accusing a targeted individual." *Williams,* at 2243.[13] The plurality noted the reports in *Melendez–Diaz* and *Bullcoming* were distinguishable from the report in *Williams.* Specifically, the plurality found the "[i]ntroduction of the reports in [*Melendez– Diaz* and *Bullcoming* ] ran afoul of the Confrontation Clause because they were the equivalent of affidavits made for the purpose of proving the guilt of a particular criminal defendant at trial." *Id.,* at 2243. In *Williams,* on the other hand, the report "plainly was not prepared for the primary purpose of accusing a targeted individual." *Id.* Finally, the plurality instructed: "In identifying the primary purpose of an out-of-court statement, we apply an objective test. We look for the primary purpose that a reasonable person would have ascribed to the statement, taking into account all of the surrounding circumstances." *Id.* (citing *Bryant,* at 1156).

While the plurality opinion did not consider the formulation of the "primary purpose" test in *Williams* to be any different from *Melendez–Diaz* or *Bullcoming,* this is not how the dissenting and concurring Justices construed it.[14] Justice Kagan, joined by Justices Scalia, Ginsburg, and Sotomayor, noted in her dissent:

> [T]he plurality states that the ... report was "not prepared for the primary purpose of accusing a targeted individual." Where that test comes from is anyone's guess. Justice Thomas rightly shows that it derives neither from the text nor from the history of the Confrontation Clause. And it has no basis in our precedents. We have previously asked whether a statement was made for the primary purpose of establishing "past events potentially relevant to later criminal prosecution"—in other words, for the purpose of providing evidence. None of our cases has ever suggested that, in

**13.** The plurality also found the DNA report did not violate the Confrontation Clause because the report was not offered for its truth. *Id.,* at 2240.

**14.** *See Kennedy,* at 916. *See also Leach,* at 590.

addition, the statement must be meant to accuse a previously identified individual; indeed, in *Melendez–Diaz*, we rejected a related argument that laboratory "analysts are not subject to confrontation because they are not 'accusatory' witnesses."

*Williams*, at 2273–74 (Kagan, J., dissenting) (citations omitted).

Whether *Williams* creates a "new" test, superseding *Melendez–Diaz* and *Bullcoming*, does not need to be addressed here, for the certificates at issue are nontestimonial for purposes of the Confrontation Clause under both *Melendez–Diaz/Bullcoming* and *Williams*. The calibration and accuracy certificates were not prepared for the primary purpose of providing evidence in a criminal case, let alone for the primary purpose of accusing appellant. Accordingly, we affirm.

Order affirmed. Jurisdiction relinquished.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices SAYLOR, BAER, TODD and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

I join the majority in holding—consistent with the great weight of judicial decisions on the subject, *see, e.g., People v. Pealer*, 20 N.Y.3d 447, 962 N.Y.S.2d 592, 985 N.E.2d 903, 908 & n. 1 (2013) (collecting cases)—that the admission into evidence of calibration and accuracy certificates for breath-testing devices does not violate the Sixth Amendment to the United States Constitution, per the new Confrontation Clause jurisprudence heralded by *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

Given the uncertainties arising in *Crawford's* wake, I take this opportunity to observe that the majority, appropriately I believe, has couched its conclusions in terms of the Supreme Court's "primary purpose" rubric. *See, e.g., Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273, 165 L.Ed.2d

224 (2006).[1] In this regard, I am receptive to the argument that breath-testing machinery maintained by law enforcement instrumentalities is, by its nature, used for the purpose of providing evidence in criminal cases, and that it is a fair point that calibration and accuracy testing of the machines should be viewed as being derivative of such purpose. From my point of view, it is only because courts are willing to consider the primary purpose in a more abstract fashion, speaking in terms of the more general aim to maintain equipment accuracy and integrity [2]—or because we do accept the *Williams* plurality's redirection of the test for determining testimonial nature to "targeted individual[s]," *Williams v. Illinois*, 567 U.S. ——, ——, 132 S.Ct. 2221, 2243, 183 L.Ed.2d 89 (2012) (plurality)—that we are able credibly to couch certifications which may be instrumental to criminal convictions as being "nontestimonial" in character.[3]

---

**1.** Although the "primary purpose" terminology arose in the context of questioning by a law enforcement officer, *see id.*, various courts have employed the concept in addressing Confrontation Clause challenges outside that limited setting. *See, e.g., Pealer*, 962 N.Y.S.2d 592, 985 N.E.2d at 907.

**2.** *See, e.g., Pealer*, 962 N.Y.S.2d 592, 985 N.E.2d at 907 ("It may reasonably be inferred that the *primary motivation* for examining the breathalyzer was to advise [a police department] that its machine was adequately calibrated and operating properly." (emphasis added; citation omitted)).

**3.** Along these lines, I believe it also bears mention that there is legitimate cause for concern with calibration and accuracy testing, particularly in light of blood-alcohol-content thresholds which may control criminal liability or its severity in particular cases. For example, an *amicus* observes that, nationwide, there have been examples of largescale error in the calibration of breath-test devices, highlighting that over 1,000 Philadelphia DUI cases were compromised due to improper maintenance. *See* Brief for *Amicus* Pa. Assoc. for Drunk Driving Defense Attorneys at 11; *id.* at Appendix 2 (citing "Botched Breath Tests Affect Philly DUI Cases," SEATTLE TIMES, March 23, 2011, http://seattletimes.com/). Although the majority posits that pre-trial motion procedure is available where there is "actual concern about the calibration or accuracy testing," Majority Opinion, at 96, 73 A.3d at 570, it does not acknowledge the legitimate role for "concern" in a broad range of cases in which breath-testing evidence will be admitted against criminal defendants or the limited avenues for discovery available to defendants to facilitate a defense inquiry.

While again, I support the majority's holding, I regard the considerations as being of a more mixed nature than is reflected on the face of the majority opinion.