J-A03037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EPHRAIM J. STEVENS, | |
| Appellant | No. 2218 EDA 2017 |

Appeal from the Judgment of Sentence June 22, 2017
in the Court of Common Pleas of Monroe County
Criminal Division at No.: CP-45-SA-0000007-2017

BEFORE:  GANTMAN, P.J., McLAUGHLIN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                          **FILED APRIL 13, 2018**

Appellant, Ephraim J. Stevens, appeals *pro se* from the judgment of sentence imposed on June 22, 2017[1] after his conviction of speeding, pursuant to 75 Pa.C.S.A. § 3362(a)(3).  We affirm.

We take the procedural and factual background of this case from our independent review of the certified record and the trial court's August 9, 2017 opinion.  On November 10, 2016, Officer Eric Rath of the Pocono Township Police Department was conducting a speed tracking operation on Pa. Route

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court found Appellant guilty and sentenced him on the record on June 22, 2017.  (*See* N.T. Trial, 6/22/17, at 43-44).  The sentence was entered on the docket on June 23, 2017.  (*See* Summary Appeal Docket, Docket Number: CP-45-SA-0000007-2017, at 4).

611 South in a marked police vehicle. Officer Rath checked the speed of approaching vehicles with a Tracker speed timing device. The officer was certified in the device's use, and had used it numerous times in the past, including at this particular location.

At approximately 5:00 A.M., Officer Rath observed a gray Honda sedan approach the speed control area. He activated the Tracker, which calculated the vehicle's speed as 75.5 miles per hour. The posted speed limit was 45 miles per hour. The officer pulled over the Honda automobile, which was being driven by Appellant.

On December 14, 2016, after a hearing, the magisterial district judge convicted Appellant of speeding, pursuant to 75 Pa.C.S.A. § 3362(a)(3).[2] Appellant timely appealed to the trial court, which held a summary appeal trial on June 22, 2017, and convicted him of violating section 3362(a)(3). The court sentenced Appellant to pay a fine of $85.00, plus costs. Appellant timely appealed.[3]

Appellant raises one question for this Court's review: "Under the U.S. Constitution's [S]ixth [A]mendment, [are] an appellant's confrontation rights

---

[2] Pursuant to section 3362(a)(3), "no person shall drive a vehicle at a speed in excess of . . . [a]ny [] maximum speed limit established under this subchapter." 75 Pa.C.S.A. § 3362(a)(3).

[3] Appellant filed a timely court-ordered statement of errors complained of on appeal on July 26, 2017. The trial court filed an opinion on August 9, 2017. *See* Pa.R.A.P. 1925.

violated in a criminal trial when, over appellant['s] objection, a certificate's statements are admitted to prove an element of the offense, where the certificate's declarant did not attend trial and could not be cross-examined?" (Appellant's Brief, at 3-4).

We observe first that "[w]hether Appellant's confrontation rights were violated is a question of law; therefore, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Akrie**, 159 A.3d 982, 988 (Pa. Super. 2017) (citation and footnote omitted). "The Confrontation Clause . . . prohibits out-of-court testimonial statements by a witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination." **Commonwealth v. Yohe**, 79 A.3d 520, 531 (Pa. 2013), *cert. denied*, 134 S. Ct. 2662 (2014) (citation and footnote omitted).

> [The Pennsylvania Supreme Court] described the class of testimonial statements covered by the Confrontation Clause as follows:
>
>> Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Commonwealth v. Dyarman*, 73 A.3d 565, 568-69 (Pa. 2013), *cert. denied*, 134 S. Ct. 948 (2014) (citations and quotation marks omitted).

In **Dyarman**, the appellant challenged the admission of calibration and accuracy certificates for breath testing machines in evidence on the basis that this violated her Confrontation Clause rights. The Pennsylvania Supreme Court rejected the argument because:

> [T]he calibration and accuracy certificates did not establish an element of the offense, and were prepared without knowledge of any particular case or for use in any particular trial. . . . [T]he certificates . . . did not provide any information regarding appellant's BAC or even refer to her. They merely certified the reliability of the device. The certificates were prepared weeks before the November 28, 2009 offense; the calibration certificate was issued October 20, 2009, and the accuracy certificate was issued November 9, 2009. In light of the foregoing, we conclude the calibration and accuracy certificates were nontestimonial in nature because they were not prepared for the primary purpose of providing evidence in a criminal case, and their admission into evidence did not violate appellant's Confrontation Clause rights.

*Id.* at 569 (record citations and footnote omitted).

Similarly, here, the trial court admitted the Commonwealth's PennDOT form MV-471B into evidence. (**See** N.T. Trial, at 10-11; Commonwealth's Exhibit 1, Certificate of Accuracy, 9/20/16). The certificate indicated that Davidheiser's Speedometer Repair, Inc., an officially approved testing station, tested the accuracy and calibration of the Tracker. (**See** Certificate of Accuracy); **see also** 75 Pa.C.S.A. § 3368(d). It also reflected that

- 4 -

Davidheiser's performed the test on September 20, 2016, fifty-one days[4] before Appellant was cited in this case. (***See*** Certificate of Accuracy, ***supra***). The certificate did not contain any information about Appellant or refer to him at all. Accordingly, the certificate "merely certified the reliability of the device[,]" and was "nontestimonial in nature because [it was] not prepared for the primary purpose of providing evidence in [Appellant's] case, and [its] admission into evidence did not violate [his] Confrontation Clause rights." ***Dyarman***, ***supra*** at 569 (footnote and citation omitted).

We also note that the language of the Vehicle Code itself supported the certificate's admission. Section 3368 of the Vehicle Code provides, in relevant part, that:

> All mechanical, electrical or electronic devices shall be of a type approved by the department, which shall appoint stations for calibrating and testing the devices and may prescribe regulations as to the manner in which calibrations and tests shall be made. . . . A certificate from the station showing that the calibration and test were made within the required period and that the device was accurate shall be competent and *prima facie* evidence of those facts in every proceeding in which a violation of this title is charged.

75 Pa.C.S.A. § 3368(d).

"The holdings of our courts have long reflected the literal application of the above statute. . . . [T]he Certificate is *prima facie* evidence of the accuracy

---

[4] "Electronic devices commonly referred to as electronic speed meters or radar shall have been tested for accuracy within a period of one year prior to the alleged violation. Other devices shall have been tested for accuracy within a period of 60 days prior to the alleged violation." 75 Pa.C.S.A. § 3368(d).

of the machine, thereby placing the burden of proof on the motorist to establish that the machine was not accurate." ***Commonwealth v. Gordon***, 633 A.2d 1199, 1201-02 (Pa. Super. 1993), *appeal denied*, 652 A.2d 1321 (Pa. 1994) (citation omitted). In other words, "[t]here are no **implied** requirements[]" under section 3368(d). ***Id.*** at 1203 (emphasis in original).

Instantly, as stated above, the certificate of accuracy indicated that the calibration and accuracy tests of the tracker unit were made within the required period, at an approved service station. (***See*** Certificate of Accuracy, ***supra***). Therefore, the trial court properly admitted the certificate, which was *prima facie* evidence of the accuracy of the Tracker test results. ***See id.*** Moreover, if Appellant wished to challenge the results' reliability, it was his burden to do so, which would go to their weight, not their admissibility. ***See Dyarman***, ***supra*** at 570; ***Gordon***, ***supra*** at 1202.[5]

---

[5] Additionally, we are not legally persuaded by Appellant's reliance on ***Commonwealth v. Kittelberger***, 616 A.2d 1 (Pa. Super. 1992), because the case does nothing more than support his conviction. (***See*** Appellant's Brief, at 11 n.25, 14, 42, 45). ***Kittelberger*** reaffirms the proposition that, to establish a speeding violation, the Commonwealth must show that the defendant was speeding, that the Pennsylvania Department of Transportation approved the speed timing device, and that the device was calibrated and tested at an approved testing station within the prescribed time period. ***See Kittelberger***, ***supra***, at 4. It observes that the Commonwealth can establish this by asking the lower court to take judicial notice of the fact that the approval was published in the Pennsylvania Bulletin, and by admitting a certificate of accuracy to prove that the speed timing device was tested and calibrated within the required time-period. ***See id.*** Because instantly the Commonwealth did both of those things, (***see*** N.T. Trial, at 11; Certificate of Accuracy, ***supra***), ***Kittelberger*** does not support Appellant's position.

Accordingly, for all of these reasons, Appellant's issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/13/18</u>