J-S43012-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL JOHN MCQUAID | : | |
| | : | |
| Appellant | : | No. 292 MDA 2023 |

Appeal from the Judgment of Sentence Entered November 30, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003710-2020

BEFORE: McLAUGHLIN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:    **FILED: FEBRUARY 27, 2024**

Michael John McQuaid appeals from the judgment of sentence entered following his convictions for two counts of driving under the influence of alcohol ("DUI").[1] McQuaid's counsel has filed an **Anders**[2] brief and a motion to withdraw as counsel. We grant counsel's motion to withdraw and affirm the judgment of sentence.

The trial court summarized the facts as follows:

> On August 23, 2020, around 1:00 a.m., Christopher Shank, a passenger in a vehicle that was traveling on Second (2nd) Avenue in Boyertown, Berks County, Pennsylvania, observed a motor vehicle make an abrupt right-hand turn into a parked vehicle. Mr. Shank called 911 and approached the vehicles. Michael

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(a)(1), (c).

[2] **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

McQuaid[,] the driver of the vehicle which had turned into the parked vehicle, was unresponsive to Mr. Shank's attempts to wake him. There were no other persons in the vehicle.

Officer Michael Hoppes, of the Eastern Regional Police Department, responded to the accident scene. While Officer Hoppes was checking on [McQuaid], Mr. Shank pulled the vehicle's keys out of the ignition and put them on the roof of the vehicle. (Notes of Testimony, hereinafter "N.T.", pages 43-47).

Officer Hoppes observed [McQuaid] in the driver's seat of the vehicle stopped across lanes of travel in front of a legally parked, unoccupied, vehicle. While speaking with [McQuaid], Officer Hoppes observed that [McQuaid] had glassy, bloodshot eyes and slow, slurred speech. Officer Hoppes also smelled an odor of alcohol coming from [McQuaid's] person. Officer Hoppes asked [McQuaid] if he had been drinking to which [McQuaid] replied[,] "[Y]es." [McQuaid] told Officer Hoppes that no one else had been in his vehicle. (N.T. pp. 50-51, 54-55).

Officer Hoppes asked [McQuaid] to perform Standardized Field Sobriety Tests ("SFSTs"). When [McQuaid] was asked to perform the Walk and Turn Test SFST, [McQuaid] declined and stated, "[I]f you're going to arrest me, just arrest me." [McQuaid] admitted to being the driver of the vehicle that struck the parked vehicle, and Officer Hoppes then took [McQuaid] into custody. (N.T. pp. 55-57).

Officer Hoppes transported [McQuaid] to the Central Processing Center at the Berks County Courthouse. (N.T. pp. 57-58). Officer Hoppes read the Pennsylvania Department of Transportation form DL-26 to [McQuaid]. (Commonwealth Exhibit No. 12). [McQuaid] consented to the breath test. Officer Hoppes watched [McQuaid] for the required twenty (20) minute observational period before [McQuaid] submitted to two (2) breath tests, administered by Deputy Sherriff Clayton Wagner. [McQuaid] did not vomit, regurgitate or ingest any substances, including alcohol, during the 20-minute observational period. (N.T. pp. 58-60).

Deputy Sheriff Clayton has completed thirty-two (32) hours of training to qualify to serve as a breath test operator. (N.T. p, 73, Commonwealth Exhibit No. 13). Deputy Sherriff Clayton explained at trial that when the two (2) breath test samples are taken, the one which results in the lowest reading is used for prosecution purposes (N.T. p. 74). He explained that the device used to analyze the breath samples is a DataMaster (DMT) instrument.

The DMT was certified as accurate, and calibrated, and functional at the time of [McQuaid's] breath tests. (N.T. p. 77, Commonwealth Exhibit No. 14, which includes the certificates of Breathtesting Device Accuracy and the Breathtesting Device Calibration).

The DMT results indicated [McQuaid's] blood alcohol level ["BAC"] was .181%. (N.T. p. 83). At trial, Defense Counsel agreed with the admission of the Commonwealth's Exhibit 14 but argued that Deputy Sherriff Clayton's supervisors did not testify about the information contained in Exhibit No. 14. The Commonwealth argued that the business record exception to the documents did not require the testimony of the supervisors. (N.T. p. 83). The Court found that the documents in Commonwealth Exhibit No. 14 met the business exception rule under Pa.R.E. 803(6) and admitted them at trial. (N.T. pp. 84-85).

Prior to adjourning the proceedings on the first day of trial, the court advised the parties, counsel, and the jury that trial would resume the next morning at 9:00 a.m. As of 9:16 a.m. on the second day of trial, [McQuaid] was not present. At 9:25 a.m., Defense Counsel informed the court that she had spoken with [McQuaid] at 9:00 a.m. who said he had a flat tire and that "he's on the way in ten minutes." (N.T. p. 99). The undersigned judge informed the jury, before closing arguments began, that "[j]ust preliminarily, I want to note that [McQuaid] had some transportation difficulties coming in this morning but because of the time here today, we're almost a half an hour past the agreed upon starting time, we're going to proceed and you shouldn't hold this against [McQuaid] for being late, okay?" (N.T. pp. 99-100). Defense Counsel then proceeded with her closing argument. [McQuaid] entered the courtroom approximately halfway through her closing argument.

Trial Court Opinion, filed 5/26/23, at 2-5.

A jury found McQuaid guilty of the above offenses. He was sentenced to 27 months to seven years' incarceration. McQuaid filed a post-sentence motion, which was denied. This appeal followed.

Counsel's **Anders** brief identifies three potential issues:

1. Whether the trial court erred when it admitted the certificate of calibration and certificate of accuracy of the breath testing device used on [McQuaid].

2. Whether the evidence was insufficient to support a guilty verdict for driving under the influence[.]

3. Whether the trial court erred by conducting part of the trial in absentia.

*Anders* Br. at 6.

Before reviewing counsel's ***Anders*** brief, we must first determine whether counsel has satisfied the necessary requirements for withdrawing as counsel. ***See Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported ***Anders*** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw"). To withdraw pursuant to ***Anders***, counsel must: 1) petition the court for leave to withdraw stating that, after a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the client; and 3) advise the client that he or she has the right to retain other counsel or proceed *pro se*. ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*).

Further, in the ***Anders*** brief, counsel seeking to withdraw must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling

case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361. If counsel meets the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." ***Id.*** at 355 n.5 (quoting ***Commonwealth v. McClendon***, 434 A.2d 1185, 1187 (Pa. 1981)).

Instantly, we find that counsel has complied with the above requirements. In his ***Anders*** brief, counsel has provided a summary of the procedural and factual history of the case with citations to the record. Further, counsel's brief identifies three issues that could arguably support the appeal, as well as counsel's assessment of why the appeal is frivolous, with controlling case law and citations to the record. Additionally, counsel served McQuaid with a copy of the ***Anders*** brief and advised him of his right to proceed *pro se* or to retain a private attorney to raise any additional points he deemed worthy of this Court's review. ***See*** Motion to Withdraw, 8/24/23, at ¶ 4. McQuaid has not responded to counsel's motion to withdraw. As counsel has met the requirements of ***Anders*** and ***Santiago***, we will proceed to the issues counsel has identified.

The first issue presented in counsel's ***Anders*** brief is whether the court erred in admitting into evidence the certificates of calibration and accuracy for the breath testing device. ***Anders*** Br. at 12. The question is whether the

admission of this evidence violated McQuaid's rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution. *Id.* at 14.

"Whether [an a]ppellant's confrontation rights were violated is a question of law; therefore, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Akrie*, 159 A.3d 982, 988 (Pa.Super. 2017). The Confrontation Clause "prohibits out-of-court testimonial statements by a witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination." *Commonwealth v. Yohe*, 79 A.3d 520, 531 (Pa. 2013).

The Pennsylvania Supreme Court addressed this exact issue in *Commonwealth v. Dyarman*, 73 A.3d 565 (Pa. 2013). There, the defendant challenged the admission into evidence of calibration and accuracy certificates for breath testing machines on the basis that it violated her Confrontation Clause rights. The Court found that "the calibration and accuracy certificates were nontestimonial in nature because they were not prepared for the primary purpose of providing evidence in a criminal case[.]" *Id.* at 569. The Court pointed out that the certificates were prepared weeks before the appellant's DUI offense and without "knowledge of any particular case or for use in any particular trial." *Id.* It further noted that the certificates did not provide the appellant's name or BAC, but rather "merely certified the reliability of the device." *Id.* The Court thus concluded that the certificates' admission into evidence did not violate the appellant's Confrontation Clause rights. *Id.*

Here, like in **Dyarman**, the certificates at issue were not prepared for the primary purpose of providing evidence in a criminal case. Rather, they were prepared before the offense occurred to ensure the reliability of the device. They contained no information regarding McQuaid or his BAC. Thus, the certificates were nontestimonial in nature and McQuaid's claim that his Confrontation Clause rights were violated is frivolous.

The second issue identified in counsel's **Anders** brief is a challenge to the sufficiency of the evidence supporting McQuaid's DUI convictions. **Anders** Br. at 18. The narrow issue is whether the Commonwealth failed to produce sufficient evidence that McQuaid was operating a motor vehicle within two hours of being tested at the booking center. **Id.** at 19. The argument is that "the observing officer did not adequately perform the 20-minute observation period because the officer searched him, read him the DL- 26 [form], and did not sign off on whether the appellant burped or vomited." **Id.** at 20.

Our standard of review when reviewing a challenge to the sufficiency of the evidence is *de novo*, while "our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." **Commonwealth v. Rushing**, 99 A.3d 416, 420-21 (Pa. 2014). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). The Commonwealth may sustain its burden by

means of wholly circumstantial evidence. ***Commonwealth v. Dix***, 207 A.3d 383, 390 (Pa.Super. 2019). Further, the trier of fact is free to believe, all, part, or none of the evidence presented. ***Commonwealth v. Beasley***, 138 A.3d 39, 45 (Pa.Super. 2016). "[T]his Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." ***Commonwealth v. Smith***, 146 A.3d 257, 261 (Pa.Super. 2016).

McQuaid was convicted of DUI pursuant to 75 Pa.C.S.A. §§ 3802(a)(1) and (c), which provide:

> **(a) General impairment.--**
> (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.
>
> ***
>
> **(c) Highest rate of alcohol.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. §§ 3802(a)(1), (c).

To have sufficient evidence to establish a conviction under 75 Pa.C.S.A. § 3802(a)(1), the Commonwealth must prove that the defendant operated the car and that he "imbib[ed] a sufficient amount of alcohol such that [he was] rendered incapable of safely driving." ***Commonwealth v. Griffith***, 32 A.3d

- 8 -

1231, 1238 (Pa. 2011) (citation omitted). To sustain a conviction under 75 Pa.C.S.A. § 3802(c), the Commonwealth must establish that the defendant's BAC was at least .16% or greater within two hours after the defendant last drove or operated the motor vehicle. *See* 75 Pa.C.S.A. § 3802(c).

Here, Shank testified that he observed McQuaid's vehicle make an abrupt right-hand turn into a parked vehicle. N.T., 10/4/22-10/5/22, at 44. Within 30 seconds of witnessing the accident, Shank called 911 and approached the vehicle. *Id.* at 44-45. Shank stated that he found McQuaid unresponsive in the driver's seat. *Id.* at 45-46. Shank testified that the police arrived within five minutes after he called 911. *Id.* at 46.

Officer Hoppes testified that when he arrived at the scene, he observed McQuaid in an SUV stopped across lanes of travel in front of a legally parked vehicle. *Id.* at 51. While speaking with McQuaid, Officer Hoppes observed that McQuaid had glassy and bloodshot eyes, slurred speech, and an odor of alcohol coming from his body. *Id.* at 54-55. Officer Hoppes testified that McQuaid admitted that he had been drinking and that he was the driver of the vehicle. *Id.* at 54, 56. McQuaid was arrested at 1:20 a.m. *Id.* at 86.

McQuaid arrived at the booking center at 2:02 a.m. *Id.* at 90. Officer Hoppes testified that he observed McQuaid for the requisite 20 minute-period before the breath test was administered, and McQuaid did not vomit, regurgitate, or ingest any substances during that period. *Id.* at 58. The testimony showed that the observation period was from 2:02 a.m. to 2:20

a.m. *Id.* at 90. McQuaid's breath test results revealed a BAC of .181. *Id.* at 91.

Based on the foregoing, there is no reasonable basis on which to argue that the evidence was insufficient to sustain McQuaid's DUI convictions. Thus, McQuaid's insufficiency claim is frivolous.

The last issue raised in counsel's *Anders* brief is whether the court erred in allowing the trial to continue in McQuaid's absence when he arrived late on the second day of trial. *Anders* Br. at 22. Counsel explains that the argument is that "this was prejudicial against him and that his right to be present at his trial outweighed the trial court's need for efficient administration." *Id.*

A criminal defendant has the right to be present at all stages of criminal proceedings. *See Commonwealth v. Wilson*, 712 A.2d 735, 737 (Pa. 1998). However, a "defendant may be tried in absentia if he or she is absent without cause when the trial is scheduled to begin or if the defendant absconds without cause after the trial commences." *Commonwealth v. Faulk*, 928 A.2d 1061, 1066 (Pa.Super. 2007). Pennsylvania Rule of Criminal Procedure 602 governs a trial in absentia, and provides, in relevant part:

> (A) The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. The defendant's absence without cause at the time scheduled for the start of trial or during trial shall not preclude proceeding with the trial, including the return of the verdict and the imposition of sentence.

Pa.R.Crim.P. 602(A). We review a decision to conduct a trial in absentia for an abuse of discretion. *See Commonwealth v. DeCosta*, 197 A.3d 813, 816 (Pa.Super. 2018). Violations of the defendant's right to be present are subject to harmless-error review. *See Commonwealth v. Williams*, 959 A.2d 1272, 1283 (Pa.Super. 2008), *aff'd*, 9 A.3d 613 (Pa. 2010).

Here, McQuaid was present for the first day of trial. At the close of the first day of trial, the court instructed the jury to return the next day at 8:30 a.m. for closing arguments and the jury charge, which would start at 9:00 a.m. N.T., 10/4/22-10/5/22, at 97-98. The next morning, McQuaid's counsel informed the court that McQuaid had a flat tire and would arrive at court at 9:10 a.m. *Id.* at 99. By 9:25 a.m., McQuaid still had not arrived so the court decided to proceed without him stating, "[W]e can't hold up this trial indefinitely waiting for [McQuaid]." *Id.* Before closing arguments began, the court told the jury, "Just preliminarily, I want to note that [McQuaid] had some transportation difficulties coming in this morning but because of the time here today, we're almost a half an hour past the agreed upon starting time, we're going to proceed and you shouldn't hold this against [McQuaid] for being late, okay?" *Id.* at 99-100.

Thus, McQuaid was notified of the day and time to return to court. The court's instruction to the jury not to hold his absence against him was sufficient to cure any alleged prejudice. This claim is frivolous.

In short, we find the issues raised in counsel's *Anders* brief are wholly frivolous. Further, after an independent review of the record, we conclude that

- 11 -

no other, non-frivolous issue exists. Therefore, we grant counsel's motion to withdraw. Having determined that the appeal is wholly frivolous, we affirm the judgment of sentence.

Judgment of sentence affirmed. Motion to withdraw as counsel granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2024