J-S51041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARK LEE-PURVIS, | |
| Appellant | No. 3641 EDA 2015 |

Appeal from the PCRA Order December 17, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0004122-2012

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED SEPTEMBER 23, 2016**

Appellant, Mark Lee-Purvis, appeals from the order of December 17, 2015, which dismissed, without a hearing, his first counseled petition brought under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  On appeal, Appellant claims that he received ineffective assistance of counsel and that his sentence is illegal.  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from this Court's February 7, 2014 memorandum on direct appeal and our independent review of the certified record.

_____

[*] Retired Senior Judge assigned to the Superior Court.

In late 2008, Tyrell Ginyard [the victim] was arrested on charges of violating the Uniform Firearms Act. Shortly thereafter, he began providing information about several illegal gun sales he had made in 2004, including two to [Appellant], in order to mitigate his own exposure.

On September 5, 2011, shortly before the preliminary hearing in this matter, [Appellant] posted to his Facebook page an image of a rat with a ring around it and line through it that said "I hate rats" and "No rats allowed." The caption to the photo read "Tyrell Ginyard is a RAT . . . he frequents North Philly, lives in West Philly and is about to have a baby from a girl in South Philly (5th Street) . . . he tries to fit into everybody's set and engage in all types of illegal activity in hopes of making people think he's thorough . . . BEWARE . . . He'll even lie on you to cut himself a sweet deal . . . I got a two-page affidavit to prove it . . . ANYBODY who knows him should expose his bitch ass just like me and bring the rat outta [sic] hiding." The caption then contained a hyperlink to [the victim's publically available] trial docket sheet and said "Here's a copy of his court dockett [sic] sheet . . . look at his charges and then look at the *Nolle Prosed's* [sic] . . . everything else is self-explanatory . . . if U don't understand it inbox me and i'll [sic] be happy to walk you through it . . . I'll have a pic of this crumb later . . . Thank You . . . that's my PSA for today."

Three days later, on September 8, 2011, [Appellant] posted a picture of [the victim] with the words "RAT BOY A/K/A TYRELL GINYARD" written across the picture and the word "RAT" made to look as if it was part of [the victim's] necklace. The caption to the picture read "I told yall [sic] I was gonna [sic] get a pic of this crumb . . . RAT_BOY!!!!!" [The victim] informed Special Agent [Martin] Dietz of these Facebook photos. On September 23, 2011, Special Agent Dietz prepared and served a search warrant on Facebook.com for

information related to the user "MIZ ASSAPPA PURVIS AKA MARK-LEE PURVIS."

A search of [Appellant's] publically-available Facebook page revealed that on December 10, 201[1], [Appellant] posted a picture of a fist with the middle finger extended which said "FUCK YOU! FUCK HER TOO! Salute National Fuck You Day!!!!!! Which is EVERYDAY!!!!!" Below the picture, but still part of the image, it read, "this is a personal message from ME to the following 'Dickheads' . . . [names redacted for trial] Detective Martin Dietz, [names redacted] and Police Informant Tyrell Ginyard. Yall [sic] plan backfired assholes . . . now look who's laughing . . . Ha-Ha-Ha-Ha-Ha . . ." The caption to the photo read "[i]f ya [sic] name ain't on this poster and it should be-don't think you dodged a bullet . . . i'll [sic] get around to you eventually."

Each of these items was posted to Facebook account number 100000261860316, a unique user account bearing the name "Miz Asappa Purvis" and containing several photographs of [Appellant] as well as other information, including business Information and an email address, identifying [Appellant] as the person to whom the account corresponds.

[Appellant] initially evaded officers who attempted to arrest him at his home on March 10, 201[2], using the roof of an adjoining house to get away. He surrendered with his attorney shortly thereafter and was taken into custody on March 14, 201[2].

Trial Court Opinion, 3/25/13, at 2-4 (footnote and citations to notes of testimony omitted).[a]

[a] The firearms violations filed against Appellant ultimately were dismissed because they were filed beyond the applicable statute of limitations. *See* Trial Court Opinion, 3/25/13, at 1.

On September 19, 2012, a jury convicted Appellant of [retaliation against a witness, 18 Pa.C.S.A. § 4953, intimidation of a witness, 18 Pa.C.S.A. § 4952, and terroristic threats, 18 Pa.C.S.A. § 2706]. On December 20, 2012, the trial court sentenced Appellant to an aggregate term of five to ten years of imprisonment. Thereafter, the trial court denied Appellant's post-sentence motion. . . .

(*Commonwealth v. Lee-Purvis*, No. 533 EDA 2013, unpublished memorandum at **1-3 (Pa. Super. filed February 7, 2014)).

On February 7, 2014, this Court affirmed the judgment of sentence. (*See Commonwealth v. Lee-Purvis*, 97 A.3d 796 (Pa. Super. 2014) (unpublished memorandum)). Appellant did not seek leave to appeal to the Pennsylvania Supreme Court.

On May 19, 2014, Appellant, acting *pro se*, filed the instant timely PCRA petition. Subsequently, the PCRA court appointed counsel. On May 31, 2015, PCRA counsel filed an amended PCRA petition. On August 13, 2015, retained counsel entered an appearance on behalf of Appellant. On October 23, 2015, the PCRA court granted retained counsel's request to adopt the previously filed amended PCRA petition. On November 19, 2015, the PCRA court issued notice of its intent to dismiss the petition pursuant to Pennsylvania Rule of Criminal Procedure 907(1). Appellant did not file a response to the Rule 907 notice, instead, on December 7, 2015, he filed a

notice of appeal.[1]  On December 17, 2015, the PCRA court issued an opinion dismissing Appellant's PCRA petition.  The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal.  ***See*** Pa.R.A.P. 1925(b).  The PCRA court did not issue a Rule 1925(a) opinion. ***See*** Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review.

Did the [PCRA c]ourt err in denying [Appellant's] PCRA [p]etition because he raised meritorious ineffective assistance of counsel claims, to wit:

a. Trial [counsel] was ineffective because:

(1)      he failed to provide an alibi witness at the preliminary hearing and to appeal that court's determination;

(2)      he failed to provide Appellant with discovery materials;

(3)      he failed to raise a confrontation clause issue;

(4)      he failed to allege a poisonous tree violation;

(5)      he failed to argue a ***Brady***[2] violation; and

---

[1] The Pennsylvania Rules of Appellate Procedure provide: "[a] notice of appeal filed before the entry of the appealable order shall be treated as filed after such entry and on the day thereof."  Pa.R.A.P. 905(a)(5).

[2] ***Brady v. Maryland***, 373 U.S. 83 (1963).

        (6)      he failed to impeach a Commonwealth witness;

     b. Appellate counsel was ineffective because:

        (1)      he failed to challenge the Commonwealth's closing remarks on appeal; and

        (2)      he failed to preserve the weight of the evidence and legality of sentence claims through proper post-sentence motions[?]

(Appellant's Brief, at 6).

We review the denial of a post-conviction petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. *See Commonwealth v. Faulk*, 21 A.3d 1196, 1199 (Pa. Super. 2011). To be eligible for relief pursuant to the PCRA, Appellant must establish, *inter alia*, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S.A. § 9543(a)(2). *See* 42 Pa.C.S.A. § 9543(a)(2). He must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. *See* 42 Pa.C.S.A. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b). Further,

    . . . a PCRA petitioner is not automatically entitled to an evidentiary hearing. We review the PCRA court's decision dismissing a petition without a hearing for an abuse of discretion.

- 6 -

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citations omitted).

Counsel is presumed effective, and an appellant bears the burden to prove otherwise. *See Commonwealth v. McDermitt*, 66 A.3d 810, 813 (Pa. Super. 2013). The test for ineffective assistance of counsel is the same under both the United States and Pennsylvania Constitutions. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Commonwealth v. Jones*, 815 A.2d 598, 611 (Pa. 2002). An appellant must demonstrate that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001), *abrogated on other grounds by Commonwealth v. Grant*, 813 A.2d 726

(Pa. 2002). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." **Jones**, **supra** at 611 (citation omitted).

Appellant first contends,[3, 4] that he received ineffective assistance of trial counsel at the preliminary hearing because the evidence was insufficient to hold the case for trial and counsel did not present the testimony of purported alibi witness Dezmond Cotton. (**See** Appellant's Brief, at 19-21, 31). However, Appellant cannot establish actual prejudice relative to the alleged errors that transpired at his preliminary hearing. Indeed, "once a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is rendered immaterial." **Commonwealth v. Sanchez**, 82 A.3d 943, 984 (Pa. 2013) (citation omitted). Thus, because the truth-determining process is not implicated, Appellant's ineffectiveness of counsel claims in this regard are without merit.

---

[3] We note that the issues in the argument section of Appellant's brief are not in the same order as in his statement of the questions involved. For ease of disposition, we will address them in the order listed in the statement of the questions involved.

[4] In his brief, Appellant's actual first contention is that trial counsel was ineffective for failing to hire an expert witness. (**See** Appellant's Brief, at 18-19). However, Appellant did not include this claim in his statement of the questions involved. The Rules of Appellate Procedure provide that issues to be resolved must be included in the statement of questions involved or "fairly suggested" by it. Pa.R.A.P. 2116(a). This issue is not included in the statement of questions involved, nor is it "fairly suggested" by it. Thus, we hold that Appellant has waived this claim. **See Commonwealth v. Harris**, 979 A.2d 387, 397 (Pa. Super. 2009) (holding claim waived when not included in statement of questions involved).

*See Commonwealth v. Lyons*, 568 A.2d 1266, 1268 (Pa. Super. 1989) (concluding that counsel was not ineffective where petitioner had failed to show that "the absence of a preliminary hearing in any way undermined the truth determining process so as to render unreliable the trial court's finding of guilt."). Thus, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this ground.

Appellant next claims that counsel was ineffective for failing to provide him with copies of the discovery materials. (*See* Appellant's Brief, at 30-31). However, Appellant's argument is undeveloped. Appellant fails to cite to any pertinent case law, and he merely states that had counsel sent him discovery he would have uncovered "information" on discs sent to the Commonwealth from Facebook corporate offices that would have exonerated him. (*See id.* at 30; *see id.* at 30-31). However, he never specifies the exact nature of that information or discusses how that information would have changed the result at trial. (*See id.* at 30-31).

"Claims of ineffective assistance of counsel are not self-proving[.]" *Commonwealth v. Spotz*, 896 A.2d 1191, 1250 (Pa. 2006) (citation omitted). Our Supreme Court has repeatedly refused to consider bald allegations of ineffectiveness, such as this one. *See Commonwealth v. Thomas*, 744 A.2d 713, 716 (Pa. 2000) (declining to find counsel ineffective "where appellant fail[ed] to allege with specificity sufficient facts in support of his claim."). Thus, because Appellant has failed to argue his claim with

sufficient specificity, we find it waived. Therefore, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this issue.

In this third issue, Appellant claims that trial counsel was ineffective for not objecting to the admission of records from Facebook, Inc., as violative of the Confrontation Clause of the Sixth Amendment to the United States Constitution.[5] (*See* Appellant's Brief, at 21-22). We disagree.

In discussing this claim, the PCRA court aptly stated:

. . . Business and public records, however, are generally admissible absent confrontation, because they are not testimonial. [*See*] *Commowealth v. Dyarman*, 73 A.3d 565, 571 (Pa. 2013)[, *cert. denied*, 134 S.Ct. 948 (2014)] (citing *Melendez Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009)).

In analyzing whether a statement is testimonial, a court must determine whether the primary purpose in creating the document was to establish or prove past events relevant to a later criminal proceeding. [*See*] *Commonwealth v. Allshouse*, 36 A.3d 163, 175-[1]76 (Pa. 2012)[, *cert. denied*, 133 S.Ct. 2336 (2013)] (citing *Michigan v. Bryant*, 562 U.S. 344, 370 (2011); *Crawford v. Washington*, 541 U.S. 36 (2004). Where a document is "not prepared for the primary purpose of accusing a targeted individual," the document is not testimonial under the Confrontation Clause. *Dyarman*, [*supra*] at 573 (citing *Williams v. Illinois*, — U.S. —, 132 S.Ct. 2221, 2243 (2012)).

_____

[5] The Sixth Amendment's Confrontation Clause provides "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him[.]" U.S. Const. amend. VI.

[Appellant] argues that the custodial records are testimonial in nature because they were produced for the purpose of proving some fact; thereby rendering trial counsel ineffective for failing to object on Confrontation Clause grounds. As [the court] discussed in its March 25, 2013 [o]pinion,[6] the Facebook, Inc. records in question were properly authenticated as domestic records of regularly conducted activity in accordance with Pa.R.E. 902(11). The Commonwealth demonstrated that automated systems produced the records at or near the time [Appellant] transmitted the information. At the time of transmission, Facebook, Inc. could not possibly anticipate that the records in question would be used at trial. No Confrontation Clause issue exists, as the records are non-testimonial and therefore admissible.

(PCRA Court Opinion, 12/17/15, at 6-7) (internal record citation omitted).

Thus, as the PCRA court cogently analyzed, there is no merit to Appellant's underlying Confrontation Clause claim. We will not fault counsel for failing to make an unmeritorious objection. *See Commonwealth v. Floyd*, 484 A.2d 365, 368 (Pa. 1984) ("it is not an 'unreasonable strategy,' to refrain from making nonmeritorious objections.") (citations omitted). Therefore, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this issue.

In his fourth issue, Appellant claims that trial counsel was ineffective for failing to move to suppress the evidence against him in the witness intimidation/retaliation case when the trial court granted a judgment of

---

[6] On direct appeal, this Court adopted the trial court's decision. (*See Commonwealth v. Lee-Purvis*, No. 533 EDA 2013, unpublished memorandum at 5 (Pa. Super. filed February 7, 2014)).

acquittal on the underlying gun charges. (**See** Appellant's Brief, at 22-23).

Specifically, Appellant claims that, because of the dismissal of the gun

charges, his arrest on the witness intimidation/retaliation charges was an

unlawful arrest and therefore all evidence against him was fruit of the

poisonous tree. (**See id.**). However, Appellant's argument is undeveloped.

Appellant fails to provide any legal support[7] for his contention that the

subsequent dismissal of the underlying gun charges rendered his arrest on

the retaliation/intimidation charges unlawful and any evidence obtained

therefrom fruit of the poisonous tree. This Court has stated,

> [i]n an appellate brief, parties must provide an argument as to
> each question, which should include a discussion and citation of
> pertinent authorities. Pa.R.A.P. 2119(a), [ ]. This Court is
> neither obliged, nor even particularly equipped, to develop an
> argument for a party. To do so places the Court in the
> conflicting roles of advocate and neutral arbiter. When an
> appellant fails to develop his issue in an argument and fails to
> cite any legal authority, the issue is waived.

**See Commonwealth v. B.D.G.**, 959 A.2d 362, 371-72 (Pa. Super. 2008)

(*en banc*) (case citations omitted) (finding claim waived for failure to cite to

---

[7] Appellant cites to **Commonwealth v. Lovette**, 450 A.2d 975, 981 (Pa. 1982), *cert. denied*, 459 U.S. 1178 (1983). (**See** Appellant's Brief, at 23). However, the issue in **Lovette** was whether a police officer's seizing of three individuals near the scene of a burglary and then transporting them to the scene for possible identification by the victim: (a) constituted an arrest, and (b) if so, if there was probable cause for the arrest. **See Lovette**, **supra** at 978-81. Thus, **Lovette** is not applicable to the instant matter.

any authority in support of appellant's argument); *see also* Pa.R.A.P. 2119(a), (b).

Here, Appellant has not cited any pertinent legal argument in support of his claim. Thus, he waived it. *See B.D.G.*, *supra* at 371-72. Therefore, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this issue.

In his fifth issue, Appellant claims that trial counsel was ineffective for failing to object to two *Brady* violations by the Commonwealth, namely that the Commonwealth failed to disclose a "tacit" agreement between it and the victim and that it allowed the victim to testify, incorrectly, that he was a witness at Appellant's preliminary hearing. (Appellant's Brief, at 24; *see id.* at 24-27). We disagree.

The PCRA court pertinently discussed this claim as follows:

> [Appellant] contends that trial counsel was ineffective for failure to object to alleged due process violations under [*Brady*, *supra*]. In *Brady*, the United States Supreme Court held that the prosecution's failure to divulge exculpatory evidence is a violation of a defendant's Fourteenth Amendment due process rights. [*See Brady*, *supra* at 91].
>
> The Pennsylvania Supreme Court has explained that, in order to establish a *Brady* violation, a petitioner must show that: (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the petitioner, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the petitioner. [*See*] *Commonwealth v. Willis*, 46 A.3d 648, 656 (Pa. 2012) (citing *Commonwealth v. Lambert*, 884 A.2d 848, 854 (Pa. 2005)). "There is no *Brady* violation when the

- 13 -

[petitioner] knew or, with reasonable diligence, could have uncovered the evidence in question[.]" ***Commonwealth v. Spotz***, 18 A.3d 244, 276 (Pa. 2011) (citing ***Lambert***, 884 A.2d at 856; ***Commonwealth v. Paddy***, 800 A.2d 294, 305 (Pa. 2002)).

Although his argument is difficult to comprehend, [Appellant] seems to allege that the Commonwealth violated ***Brady*** by: (1) withholding evidence of a "tacit agreement between the Commonwealth and [the victim];" and (2) knowingly allowing [the victim] to provide false testimony. Each allegation is without merit.

Both the trial record and [Appellant's] own averments indicate an **explicit** agreement between the Commonwealth and [the victim], as memorialized in a [m]emorandum of [a]greement. Not only did the Commonwealth provide the [m]emorandum to trial counsel, the Commonwealth entered the [m]emorandum into evidence and trial counsel used the [m]emorandum to cross-examine [the victim]. [Appellant] fails to prove that any additional evidence of [an additional tacit] agreement was suppressed or what prejudice, if any, resulted.

[Appellant] cannot establish that the Commonwealth deliberately deceived the jury or allowed the use of false testimony. The record indicates that [the victim] did not testify at [Appellant's] preliminary hearing for the [i]ntimidation and [r]etaliation charges. At trial, [the victim] stated that he had testified against [Appellant] at that hearing. [Appellant] is correct to assert that [the victim's] relevant testimony was untrue. Later, the Commonwealth presented Detective James Dougherty, who testified that [the victim] had testified at preliminary hearing for the [weapons] charges, but did not testify at the preliminary hearing for the [i]ntimidation and [r]etaliation charges, effectively curing the error. Regardless, these facts do not indicate a willful or inadvertent suppression of evidence as cognized by ***Brady***. Trial counsel therefore had no grounds to raise a ***Brady*** objection.

(PCRA Ct. Op., at 7-9) (record citations omitted, emphasis in original).

Accordingly, as the PCRA court correctly stated, there is no merit to Appellant's underlying **Brady** claim; thus, we will not fault counsel for failing to object on that ground. **See Floyd**, **supra** at 368. Therefore, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief with respect to this issue.

In his sixth claim, Appellant argues that trial counsel failed to cross-examine properly the victim and Detective James Dougherty.[8] (**See** Appellant's Brief, at 27-30). Specifically, Appellant contends that trial counsel failed to cross-examine Detective Dougherty with respect to an investigation conducted by the Office of Professional Responsibility of the Philadelphia Police Department which would have allegedly revealed "different versions of events" surrounding the unsuccessful attempt to arrest Appellant on March 10, 2011. (Appellant's Brief, at 28). It also would have demonstrated that Detective Dougherty's conduct during the attempted arrest was "unlawful and negligent." (**Id.**). Moreover, Appellant claims that trial counsel failed to cross-examine the victim with the March 9, 2011 Affidavit of Probable Cause, which would have refuted the victim's claim at

---

[8] Detective Dougherty was one of the detectives involved in the investigation of Appellant. (**See** N.T. Trial, 9/18/12, at 185). On March 10, 2011, Detective Dougherty unsuccessfully attempted to arrest Appellant. (**See id.** at 186-91).

trial that, in 2011, he had no ill feeling towards Appellant.  (***See id.***; ***see also*** N.T. Trial, 9/18/12, at 111-12).  We disagree.

A criminal defendant has the constitutional right to confront witnesses against him; this right includes the right of cross-examination.  ***See Commonwealth v. Buksa***, 655 A.2d 576, 579 (Pa. Super. 1995), *appeal denied*, 664 A.2d 972 (Pa. 1995).  Cross-examination can be used to test a witness' version of the events, to impeach his or her credibility, or to establish his or her motive for testifying.  ***See id.***  Lastly, it is well settled that the scope and vigor of any particular cross-examination is a matter of trial strategy that is left to the sound discretion of counsel.  ***See Commonwealth v. Molina***, 516 A.2d 752, 757 (Pa. Super. 1986).

Appellant's claim that trial counsel was ineffective for failing to cross-examine Detective Dougherty with respect to the investigation by the Office of Professional Responsibility lacks merit.  In support of this claim, Appellant attached three letters, one dated March 12, 2012, and the other two dated August 30, 2012, to his amended PCRA petition.  (***See*** Amended Petition under Post-Conviction Relief Act, May 31, 2015, at Exhibit A).  The first letter addressed to a Ledelle Collier exonerates the officers of any misconduct with respect to the unsuccessful attempt to arrest Appellant. (***See id.*** at Letter from Alice D. Mulvey, Chief Inspector, Office of Professional Responsibility, to Ledelle Collier, 3/12/12, at unnumbered page 1).  The second letter, addressed to Karen Lee, also exonerates the officers.

(**See id.** at Letter from Alice D. Mulvey, Chief Inspector, Office of Professional Responsibility, to Karen Lee, 8/30/12, at unnumbered page 1). The third letter, also addressed to Ledelle Collier sustains the complaint, concluding that the police lacked "exigent circumstances" to conduct a warrantless search of Collier's residence in an attempt to apprehend the fleeing Appellant. (**Id.** at Letter from Alice D. Mulvey, Chief Inspector, Office of Professional Responsibility, to Ledelle Collier, 8/30/12, at unnumbered page 1).

There is nothing in the letters that supports Appellant's vague contention that "several different versions of events" were "conducted under oath, contrary to trial testimony." (Appellant's Brief, at 27-30). Nor do the letters support Appellant's claim that Detective Dougherty's conduct was negligent. (**See id.**). At most, the letters show that Detective Dougherty's belief that he had sufficient exigent circumstances to enter a residence without a warrant in pursuit of Appellant was incorrect. (**See** Letter from Alice D. Mulvey, Chief Inspector, Office of Professional Responsibility, to Ledelle Collier, 8/30/12, at unnumbered page 1).

Moreover, the circumstances surrounding Appellant's arrest were ancillary to the issue at trial, whether Appellant posted threatening and intimidating material on Facebook. Thus, it was not an unreasonable strategy for counsel not to cross-examine the witness about such a secondary issue. **See Molina**, **supra** at 757. Further, Appellant has failed

- 17 -

to show that he was prejudiced in any way by counsel's failure to use the letters to cross-examine Detective Dougherty, thus this claim fails. **See Jones**, **supra** at 611.

Appellant's claim that trial counsel was ineffective for failing to use the Affidavit of Probable Cause to cross-examine the victim is also meritless. At trial, the victim testified that, in 2011, he felt no particular animosity towards Appellant. (**See** N.T. Trial, 9/18/12, at 111-12). Appellant claims that the Affidavit of Probable Cause contradicts this testimony because it demonstrates that the victim told police that he left his residence in 2008 for a couple of months, and when he returned, Appellant and members of his gang were using the residence to sell drugs, causing the victim to flee. (**See** Amended Petition under Post-Conviction Relief, Act, May 31, 2015, at Exhibit B, Affidavit of Probable Cause, 3/09/11, at 2-3). Initially, we note that a statement allegedly made by the victim that he and Appellant had difficulties in 2008, does not necessarily contradict his statement that he and Appellant did not have problems in 2011. Moreover, it was entirely reasonable that trial counsel, in a case concerning Appellant's attempts to intimidate the victim, chose not to elicit the information that Appellant was part of a drug gang that took over control of the victim's residence and that he and his girlfriend were afraid of them. **See Molina**, **supra** at 757. Further, Appellant has not shown how the failure to attempt to impeach the victim

using this information prejudiced him; therefore, his claim must fail. **See**

**Jones**, **supra** at 611.

Thus, as there is no merit to Appellant's underlying cross-examination claims, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this issue.

In his final claims, Appellant argues that he received ineffective assistance of sentencing/appellate counsel.[9] Namely, Appellant first contends that appellate counsel was ineffective for failing to argue on appeal that the trial court: (1) erred in admitting the Facebook posts into evidence; (2) should have dismissed the charges based on the fruit of the poisonous tree doctrine; and (3) should have granted Appellant's motion for a mistrial based upon the Commonwealths' closing arguments. (**See** Appellant's Brief, at 31-33). We disagree.

We have stated that, with respect to claims raised in PCRA petitions that appellate counsel was ineffective for failing to raise certain issues on appeal, this Court, relying on both Pennsylvania and United States Supreme Court decisions, has reiterated that neither the Pennsylvania nor the United States Constitution requires appellate counsel "to raise and to argue all colorable, nonfrivolous issues" that a criminal defendant wishes to raise on

_____

[9] New counsel represented Appellant at sentencing, post-sentence motions, and on appeal. (**See** N.T. Sentencing, 12/02/12, at 2; **see also** PCRA Ct. Op., at 11 n.6).

appeal.  ***Commonwealth v. Showers***, 782 A.2d 1010, 1015 (Pa. Super. 2001), *appeal denied*, 814 A.2d 677 (Pa. 2002) (citing ***Jones v. Barnes***, 463 U.S. 745 (1983), for the proposition that expert appellate advocacy consists of the removal of weaker issues and the focus on a few strong ones).  In ***Showers***, we further stated:

> Effective assistance of counsel on appeal is informed by the exercise of the expertise with which counsel is presumably imbued.  It is the obligation of appellate counsel to present issues which, in counsel's professional judgment, "go for the jugular" and do not get lost in a mound of other colorable, nonfrivolous issues which are of lesser merit.  Any evaluation of the effectiveness of appellate counsel must strike a balance between the duty to exercise professional judgment to limit the number of issues presented and the duty not to fail to litigate a substantial matter of arguable merit that presents a reasonable probability that a different outcome would have occurred had it been raised by prior counsel.  It is the circumstances of the particular case which must guide a court in determining whether the truth-determining process was so undermined by the alleged ineffectiveness that no reliable adjudication of guilt or innocence could have taken place.

***Showers***, ***supra*** at 1016-17 (citations omitted).  With this standard in mind, we now address the specifics of Appellant's claims.

Firstly, the record belies Appellant's claim that appellate counsel did not raise in the issue of the admissibility of the Facebook posts on appeal. On appeal, counsel specifically challenged their admissibility, claiming both that they were hearsay and that were not properly authenticated.  (***See Commonwealth v. Lee-Purvis***, ***supra*** at **3-4).  Thus, as Appellant's claim is not supported by the record, it must fail.

Second, with respect to Appellant's claim that appellate counsel failed to raise the issue that the trial court should have dismissed the charges because they were fruit of the poisonous tree, as Appellant acknowledged above, trial counsel did not raise this issue below. Thus Appellant did not preserve it for appeal and we will not fault appellate counsel for failing to raise an unpreserved issue. **See Showers**, **supra** at 1016-17. Moreover, as discussed above, Appellant has not provided any legal support for the contention that the evidence was somehow fruit of the poisonous tree because the trial court dismissed the underlying gun charges, thus he has not shown that raising this issue would have changed the result on appeal. Because Appellant has not demonstrated that counsel's failure to raise this issue on appeal prejudiced him, the claim must fail. **See Jones**, **supra** at 611.

Third, Appellant's claim that appellate counsel was ineffective for failing to challenge the trial court's denial of his motion for a mistrial based upon the Commonwealth's closing remarks lacks merit. The PCRA court correctly analyzed this issue as follows.

> [Appellant] contends that "[a]ppellate counsel failed to argue the denial of a mistrial based on the prosecutor's closing remarks." [()Amended Petition at 26()]. A prosecutor's closing remarks are reversible error only where their unavoidable effect is to prejudice the jurors, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict. [**See**] **Commonwealth v. Tedford**, 960 A.2d 1, 33 (Pa. 2008). "Comments grounded upon the evidence or reasonable

inferences therefrom are not objectionable, nor are comments that constitute oratorical flair." **Commonwealth v. Sneed**, 45 A.3d 1096, 1110 (Pa. 2012) (citing [**Commonwealth v.**] **Hutchinson**, 25 A.3d [277,] 307 [(Pa. 2001), *cert. denied*, 132 S.Ct. 2711 (2012)] (internal quotation marks omitted)). Allegedly improper remarks are reviewed in the context of the closing argument as a whole. [**See**] **Sneed**, 45 A.3d at 1110 (citing **Commonwealth v. Lacava**, 666 A.2d 221, 235 (Pa. 1995)). "The decision to declare a mistrial is within the sound discretion of the court and will not be reversed absent a flagrant abuse of discretion." **Commonwealth v. Bracey**, 831 A.2d 678, 682 (Pa. Super. 2003)[, *appeal denied*, 844 A.2d 551 (Pa. 2004)] (*citing* **Commonwealth v. Cottam**, 616 A.2d 988, 997 (Pa. Super. 1992)[, *appeal denied*, 636 A.2d 632 (Pa. 1993)] (internal quotation marks omitted)).

The prosecutor told the jury that the image of a rat with a ring around it and a line through it meant, "wanted, dead or alive," seven times during his closing remarks. [(]N.T. [Trial,] 9/19/[]12[,] at 52, 55, 59-60, 63[)]. In his closing remarks, trial counsel had sought to establish that [Appellant] did not threaten [the victim]:

> The [first] question is in regard to subsection A, was anything done to harm this person [the victim]?

> *   *   *

> How can they prove beyond a reasonable doubt that [the victim] was harmed and not only was harmed . . . harmed by any unlawful act [.]

> With all those Facebook postings up there, did you see where [Appellant] is saying to [the victim] ["]I'm going to kill you, I'm going to stab you, I'm going to shoot you, I'm going to beet [sic] you up,["] what we lawyers call terroristic threats. ["]You're a rat, [you're] scum, you're a liar[,"] that's not a crime.

[(]**Id.** at 42-44[)]. In this context, the challenged comments were a fair response to trial counsel's closing remarks, and they

highlighted evidence presented at trial that [the victim] faced a genuine threat of physical violence in retaliation for acting as a government witness. [(*See*] N.T. [Trial,] 9/18/[]12 at 99-108,209-212[)]. The prosecutor's comments were not objectionable, and therefore [Appellant's] claim is without merit.

(PCRA Ct. Op., at 11-12).

Accordingly, as the PCRA court correctly stated, there is no merit to Appellant's underlying claim regarding the propriety of the Commonwealth's closing argument. Therefore we will not fault counsel for failing to raise the issue on appeal. *See Showers*, *supra* at 1016-17. Because none of Appellant's claims regarding the failure of appellate counsel to raise the above-discussed issues on appeal have merit, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief with respect to this issue.

In his next issue, Appellant claims that sentencing counsel was ineffective for failing to file a post-sentence motion challenging the weight of the evidence.[10] (*See* Appellant's Brief, at 15). We disagree.

A claim that the verdict is against the weight of the evidence concedes that the evidence is sufficient to support the verdict. *See Commonwealth v. Moreno*, 14 A.3d 133, 135 (Pa. Super. 2011), *appeal denied*, 44 A.3d

---

[10] In the argument section of his brief, Appellant abandons the claim raised in his statement of the questions involved that sentencing counsel was ineffective for failing to raise a post-sentence motion challenging the legality of his sentence. (*See* Appellant's Brief, at 7, 12-38).

1161 (Pa. 2012). The initial determination of credibility and weight to be afforded the evidence is for the factfinder, who is free to believe all, part, or none of the evidence presented. *See Commonwealth v. Kane*, 10 A.3d 327, 332-33 (Pa. Super. 2010), *appeal denied*, 29 A.3d 796 (Pa. 2011). A court must not reverse a verdict on this type of claim unless that verdict is so contrary to the evidence as to shock one's sense of justice. *See id.*

Here, Appellant generally claims that the evidence was "contradictory and inconsistent and unreliable . . . ." (Appellant's Brief, at 15). Specifically, Appellant claims that the victim's testimony that he did not expect to receive any benefit for his cooperation agreement with the Commonwealth, was incredible. (*See id.* at 16). Appellant also avers that the Commonwealth did not present credible evidence that Appellant was the individual who posted the threatening messages on Facebook. (*See id.*).

However, we note that the jury, sitting as the finder-of-fact, by its verdict clearly rejected these arguments and found Appellant guilty despite those alleged inconsistencies. Appellant utterly fails to explain why these same arguments would have formed the basis for a successful post-sentence motion challenging the weight of the evidence.

In its opinion, the PCRA court, which was also the trial court, stated that the verdict did not shock its conscience. (*See* PCRA Ct. Op., at 13). Specifically, the court noted:

- 24 -

[t]he jury's verdict did not shock [the trial c]ourt's conscience. At trial, Special Agent Dietz testified that each Facebook profile is linked to a unique identification number. [(]*See* N.T. [Trial,] 9/18/[]12[,] at 151-52[)]. Photographic evidence indicated that the Facebook profile belonging to [Appellant] contained posts advertising [Appellant's] musical production business. [(*See i*]*d.* at 207-[]08[)]. Photographic evidence further showed that the retaliatory and intimidating posts were displayed on the same profile. [(*See i*]*d.* at 205-[]06[)]. The evidence also demonstrated that each of these posts were connected to the same user identification number. [(*See i*]*d.* at 205-[]08[)]. The weight of the evidence clearly supports the inference that [Appellant] published the retaliatory and intimidating messages.

(*Id.*).

We will not fault sentencing counsel for declining to file a non-meritorious post-sentence motion challenging the weight of the evidence. *See Commonwealth v. Ross*, 856 A.2d 93, 101 (Pa. Super. 2004), *appeal denied*, 889 A.2d 1215 (Pa. 2005), *cert. denied*, 547 U.S. 1045 (2006) (refusing to find trial counsel ineffective for not filing non-meritorious weight of evidence motion).

In his final issue, Appellant claims that his sentence is unconstitutional.[11]  (*See* Appellant's Brief, at 34).  Prior to discussing the merits of this issue, we must determine if it is properly before us.

_____

[11] We note that this argument differs from that raised in the statement of questions involved, which claimed ineffectiveness of counsel for failing to challenge the legality of sentence.  (*See* Appellant's Brief, at 6).

- 25 -

While Appellant argues that his final issue is a non-waivable challenge to the legality of his sentence, (*see* Appellant's Brief, at 35), he does not actually argue that his sentence is illegal. (*See id.* at 35-38). Rather, Appellant claims by analogy that a United States Supreme Court decision, *Elonis v. United States*, 135 S.Ct. 2001 (2015) (holding that jury instruction requiring only negligence with respect to communication of threat, is not sufficient to support conviction under 18 U.S.C. § 875(c)), filed while Appellant's PCRA petition was pending below, renders his conviction unconstitutional. (*See* Appellant's Brief, at 38). Thus, Appellant's claim is not a non-waivable challenge to the legality of his sentence. Furthermore, Appellant fails to develop an argument that the holding in *Elonis* (construing a federal statute) would have dictated a different result under Pennsylvania law in this case. Appellant's claim has no arguable merit.

Appellant also claims that he properly pled this issue in his PCRA petition. (*See id.* at 34). We disagree. In his amended PCRA petition, Appellant claimed that sentencing counsel was ineffective for failing to file a motion to reconsider sentence. (*See* Amended Petition for Post-Conviction Relief Act, at 14). Appellant argued that such a motion would have been meritorious because the trial court did not consider his rehabilitative needs, the mitigating circumstances, did not give sufficient reasons to justify the sentence, and improperly imposed consecutive sentences. (*See id.*).

However, at no point did Appellant claim that his conviction was unconstitutional. (*See id.*).

It is long settled that issues not raised in a PCRA or amended PCRA petition are waived on appeal.[12] *See Commonwealth v. Lauro*, 819 A.2d 100, 103 (Pa. Super. 2003), *appeal denied*, 830 A.2d 975 (Pa. 2003) (waiving five issues not in original or amended PCRA petition). Further, an appellant cannot raise a subject for the first time on appeal. *See Commonwealth v. Hanford*, 937 A.2d 1094, 1098 n.3 (Pa. Super. 2007), *appeal denied*, 956 A.2d 432 (Pa. 2008) (new legal theories cannot be raised for first time on appeal); Pa.R.A.P. 302(a). Lastly, Appellant did not raise this issue in his statement of the questions involved, thus waiving it for that reason as well. *See Harris*, *supra* at 397. Accordingly, we find that Appellant waived his final issue.

Accordingly, for the reasons discussed above, we affirm the PCRA court's dismissal of Appellant's PCRA petition without a hearing.

Order affirmed.

---

[12] Appellant acknowledges that Supreme Court issued *Elonis* during the pendency of his petition in the PCRA court. (*See id.* at 35). He fails to provide any explanation as to why he did not seek to supplement his PCRA petition to raise the issue of the constitutionality of Appellant's conviction under *Elonis*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/23/2016