J-A17002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL AUCIELLO | : | |
| | : | |
| Appellant | : | No. 3507 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 14, 2019
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001601-2017

BEFORE: BOWES, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.: **FILED DECEMBER 8, 2020**

Michael Auciello appeals from his judgment of sentence of seventy-two hours of incarceration, plus fines and community service, imposed after the trial court convicted him of driving under the influence—highest rate ("DUI"). We affirm.

The trial court summarized the evidence offered at Appellant's non-jury trial as follows:

> At trial, the Commonwealth presented the testimony of Adam Engle. Mr. Engle testified that he was operating a vehicle, preparing to turn into a 7-Eleven convenience store in the Borough of Phoenixville, when he was struck by a vehicle backing out of the parking lot onto the road. Mr. Engle identified the driver of the vehicle that struck his as the Appellant. Mr. Engle testified that, after the collision, Appellant pulled forward into the parking lot and Mr. Engle followed behind him. Mr. Engle indicated that he exited his vehicle and attempted to speak with the Appellant, but testified that Appellant was unable to communicate well. According to Mr. Engle's observation, Appellant appeared to be intoxicated. Mr. Engle testified that Appellant attempted to leave the scene. In response, Mr. Engle asked Appellant to park his

vehicle and "get outta here" as there were several witnesses who were calling the police to report the incident. On cross-examination, Mr. Engle conceded that he was not 100% sure that Appellant was the operator of the vehicle that struck his, but certainly recognized his face.

The Commonwealth also introduced the testimony of Corporal Anthony Gray of the Phoenixville Police Department. At the time of the incident in 2017, Corporal Gray was a patrolman. He testified that on the evening of March 26, 2017, he received a dispatch call requesting that he respond to a motor vehicle accident at the 7-Eleven and that he was to look for the driver who left by foot from the scene of the accident. He was provided with a description of the individual. Corporal Gray testified that he observed an individual matching the description given walking down Nutt Road. Corporal Gray testified that he stopped the individual and engaged him in conversation. He identified Appellant as the individual he stopped that night. According to Corporal Gray, Appellant appeared under the influence of alcohol or a controlled substance due to his disheveled appearance and slurred speech. Further, Appellant appeared off-balance and was swaying. Corporal Gray testified that he questioned Appellant whether he had had anything to drink that night to which Appellant responded with "not that much, a drink or so." When asked about the accident at the 7-Eleven, Appellant did not deny his involvement. Corporal Gray testified as to Appellant's explanation of his interaction with the driver of the other vehicle, insisting that he did not flee the scene, but had a conversation with the other driver who reported minor damage, if any, to his vehicle and advised Appellant to walk away from the 7-Eleven.

Corporal Gray performed field sobriety tests ("FSTs") on Appellant. At this time, the Commonwealth introduced a video of Corporal Gray's body camera which captured the interaction with Appellant, who is clearly identified on the video. Watching the video, it is apparent that Appellant could not properly perform the FSTs. Corporal Gray testified that he then placed Appellant in custody and transferred him to the Phoenixville Hospital for a blood draw, to which Appellant consented. Corporal Gray testified as to the procedure for obtaining Appellant's blood and his testimony established that the chain of custody was not disturbed from the time the blood was drawn until it was submitted to DrugScan for testing.

Finally, the Commonwealth introduced the testimony of Dr. Richard Cohn, of DrugScan, Inc., who was certified as an expert in toxicology and pharmacology. Dr. Cohn testified that he is responsible for directing analyses on blood specimens submitted for DUI determinations. Dr. Cohn testified regarding the contents of Commonwealth's Exhibit C-2, the toxicology report, which included the facts that Appellant's blood alcohol content was .231%. Dr. Cohn further testified that, according to the "Forensic Custody and Control Document", [Appellant]t's blood was drawn at 8:20 p.m. on March 26, 2017, well within the two-hour window of [the] stop, which occurred at or around 7:30 p.m. the same day as evidenced by the body cam footage in Exhibit C-1.

Trial Court Opinion, 1/10/20, at 2-4.

Upon this evidence, the trial court convicted Appellant of DUI—highest rate. Appellant was sentenced as indicated above on August 12, 2019, and on November 12, 2019, the trial court denied his timely post-sentence motion challenging, inter alia, the weight of the evidence and the admission of Exhibit C-2. Appellant filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our consideration:

1. Did the trial court err in denying [Appellant]'s post-sentence motion due to the Commonwealth's failure to produce both author's [*sic*] of the laboratory report as well as the Commonwealth's witness not being able to testify to any specific's [*sic*] concerning their involvement with [Appellant]'s analysis, what they reviewed in confirming the results or that they certified the results, thereby depriving [Appellant] of his right to confront witnesses against him as protected by the 6th and 14th Amendments of the United States Constitution, as well as his rights under Article I, Section 9 of the Pennsylvania Constitution?

2. Did the trial court err in denying [Appellant]'s Post-Sentence Motion due to Dr. Richard Cohn's failure to identify or assert that he or a member of DrugScan prepared the "Forensic Custody and Control Document," thereby depriving [Appellant] of his right to

- 3 -

confront witnesses against him as protected by the 6th and 14th Amendments of the United States Constitution, as well as his rights under Article I, Section 9 of the Pennsylvania Constitution?

3.    Did the trial court abuse its discretion in denying [Appellant]'s Post-Sentence Motion where the verdict as to Count 1-DUI: Highest Rate of Alcohol was against the weight of the evidence because of the Commonwealth's failure to present a witness who could testify to any specifics with the analysis, who properly certified the results or could testify as to what was reviewed in certifying the blood results?

Appellant's brief at 1 (unnecessary capitalization omitted).

Appellant's first two issues, alleging violations of the Confrontation Clause, present questions of law "for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Brown*, 185 A.3d 316, 324 (Pa. 2018).  We begin our review of these issues with an examination of the pertinent legal principles.[1]

> The Confrontation Clause of the Sixth Amendment, made applicable to the States via the Fourteenth Amendment, provides that "in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him."  In [*Crawford v. Washington*, 541 U.S. 36, 51 (2004)], the Court held that the Sixth Amendment guarantees a defendant's right to confront those "who bear testimony" against him, and defined "testimony" as "a solemn declaration or affirmation made for the purpose of establishing or proving some fact."  The Confrontation Clause, the High Court explained, prohibits out-of-court testimonial

---

[1] Although Appellant in his statement of questions presented invokes both the federal and state constitutions, he presents no argument or authority to suggest that the Pennsylvania Constitution affords greater protection. Accordingly, for purposes of this appeal, we deem the rights to be coextensive. *See*, *e.g.*, *Commonwealth v. Baker*, 78 A.3d 1044, 1048 (Pa. 2013) (indicating no separate state constitutional review is warranted in the absence of a separate analysis pursuant to the factors established in *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991)).

statements by a witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination.

*Commonwealth v. Yohe*, 79 A.3d 520, 530-31 (Pa. 2013) (cleaned up).

Whether a statement is testimonial, and hence implicates the Confrontation Clause, depends upon the primary purpose of the statement. *Id*. Where the statements are contained in a document that was not created in anticipation of litigation against a particular defendant, but, for example, to establish the accuracy of testing equipment, the document is not testimonial. *See Commonwealth v. Dyarman*, 73 A.3d 565, 569 (Pa. 2013). Indeed, the U.S. Supreme Court acknowledged that "it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009) (observing that gaps in the chain of custody concern the weight, not admissibility, of evidence).

However, statements prepared for use at a particular defendant's trial to prove an element of a crime are considered to be testimonial. *See id*. at 310. Where such testimonial statements are included in a laboratory analysis document, the defendant must be afforded the right to confront and cross-examine the analyst who offered the out-of-court statement, not a mere surrogate whose cross-examination could not "expose any lapses or lies" upon the part of the actual analyst. *Bullcoming v. New Mexico*, 564 U.S. 647, 661 (2011). Where the testifying witness was familiar with testing procedures

- 5 -

such that she would have been able to identify deviations, and was "at the top of the inferential chain" in reaching the scientific conclusion at issue, the witness qualifies as an appropriate "analyst" for purposes of the Confrontation Clause even though she relied upon raw data supplied by others. **Yohe**, **supra** at 540.

We now consider the out-of-court statements about which Appellant complains. First, Appellant contends that his confrontation rights were violated by the admission of the April 5, 2017 toxicology report included within Commonwealth Exhibit C-2. Appellant maintains that Dr. Cohn did not testify to any specific involvement in the analysis of Appellant's blood sample, but "merely signed the report and could only testify to the laboratories [*sic*] general practices and procedures," and "did not properly certify the results of the report." Appellant's brief at 18, 20. He contends that "[a]nyone familiar with DrugScan's protocols and procedures could have testified to what Dr. Cohn did." *Id*. at 32. Further, noting that the report was signed by both Dr. Cohn and Dr. Michael Coyer, Appellant asserts that the Commonwealth was also required to produce Dr. Coyer at trial, as his involvement in the analysis was "uncertain." *Id*. at 19.

The trial court agreed that the statements at issue in the toxicology report—that Appellant had a BAC of .231% within two hours of driving—were testimonial. However, it rejected Appellant's characterization of Dr. Cohn's role in creating the toxicology report in this case, deeming Dr. Cohn to be a

proper analyst witness. Specifically, the court concluded that Dr. Cohn's involvement in creating the report was materially indistinguishable from that of the witness whom our Supreme Court assessed in *Yohe*, who had

> reviewed the case folder, verified the chain of custody information and examined the personal identification information. Additionally, he checked the testing that was performed and the data that resulted, evaluated the analytical data from the duplicate gas chromatography and the enzymatic assay, compared the results of the two gas chromatography tests, compared the result of the enzymatic assay test to the two gas chromatography tests, ensured that these numbers supported each other, and reported the lowest of the two gas chromatography test results as [the defendant's] BAC.

*Yohe*, *supra* at 539-40. In comparison, the trial court offered the following characterization of Dr. Cohn's testimony:

> Dr. Cohn described his particular involvement in this case as authorizing and determining what specimens were received and what analyses should be run, maintaining the chain of custody, verifying the external chain of custody and the internal laboratory chain of custody, verifying the actual laboratory results that he authorized to be performed, and reviewing those and if accepted, which he did, then authoring a report with the findings. This is precisely what the Supreme Court concluded to be sufficient in *Yohe*.

Trial Court Opinion, 1/10/20, at 11-12 (cleaned up).

We fully agree with the trial court's assessment of the record, observe that the court conducted a thorough and accurate discussion of the applicable case law, and conclude that it correctly applied the law to the facts of this case. *See id*. at 5-11 (discussing *Crawford* and its progeny). In particular, the record reflects that Dr. Cohn had the same personal involvement in creating the lab report as that of the testifying analyst in *Yohe*—he was "at

- 7 -

the top of the inferential chain" and merely relied upon data collected by other lab technicians. *Yohe*, *supra* at 540. In accordance with *Yohe*, producing Dr. Cohn to testify and submit to cross-examination satisfied Appellant's confrontation rights, even though the Commonwealth did not call the phlebotomist who drew Appellant's blood nor the technicians who performed the lab tests.

Further, we fail to see how the fact that a second analyst also signed the report detracts from Dr. Cohn's status as an appropriate testifying witness. It is well-settled that the Commonwealth need not call every available witness in prosecuting its case*. See Commonwealth v. Gasiorowski*, A.2d 343, 344 (Pa.Super. 1973). Appellant offers no authority to suggest that the Commonwealth must produce each and every person who would be qualified to offer analyst testimony in connection with a report documenting scientific testing.[2] Likewise, Appellant offers no authority to suggest that Dr. Cohn had any obligation to certify the results of toxicology report, or that a lack of certification plays any role in analyzing whether his confrontation rights were

---

[2] Dr. Cohn explained that DrugScan has a second doctor conduct an independent review of the materials and co-sign the report in the event that Dr. Cohn would be unavailable to testify. *See* N.T. Trial, 6/19/19, at 102. Dr. Coyer was free to reject Dr. Cohn's opinion and decline to sign. *Id*.

violated.[3]    Accordingly, Appellant's challenge to the admission of the toxicology report merits no relief.

Appellant also challenges the admission of the "Forensic Custody and Control" document that was included in Exhibit C-2.  Appellant argues that the Commonwealth was required to produce a witness "personally involved in the chain of custody in this case or someone who could certify the contents of the form," since Dr. Cohn was not such a person.  Appellant's brief at 21.

The trial court concluded that Appellant waived this argument by not objecting at trial, but rather raising the issue for the first time in closing arguments, after the document had been admitted and the Commonwealth's opportunity to offer other evidence to establish the time of the blood draw had closed.    *See* Trial Court Opinion, 1/10/20, at 13-14.  Appellant does not address the trial court's waiver analysis, and our review of the certified record confirms the lack of a specific objection to the chain-of-custody form.

"It is well established that trial judges must be given an opportunity to correct errors at the time they are made." *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa.Super. 2008).  As such, a challenge to the admission of evidence is waived if not preserved by contemporaneous objection.  The

---

[3] Pa.R.Crim.P. 574 provides that a forensic laboratory report may be admitted at trial in lieu of in-court testimony in certain circumstances if the person completes a certification.  Since the Commonwealth did not attempt to offer the toxicology report in lieu of presenting Dr. Cohn as a witness at trial, Rule 574's certification requirements are not implicated.

appellant is confined to the specific objections he made at trial, and may not object on a different basis post-trial. **See Commonwealth v. Bedford**, 50 A.3d 707, 713–14 (Pa.Super. 2012). Waiver applies even to issues of constitutional dimension. **Commonwealth v. Cline**, 177 A.3d 922, 927 (Pa.Super. 2017).

Our review of the certified record confirms the trial court's representation that Appellant failed to raise any objection to any portion of Exhibit C-2 other than the toxicology report's statements regarding the testing and analysis of his blood. Consequently, the objection to admission of the chain-of-custody form also included in the exhibit is waived. **See**, **e.g.**, **Commonwealth v. Borovichka**, 18 A.3d 1242, 1253 n.6 (Pa.Super. 2011) (holding claim of error in admitting lab report was waived by the defendant's failure to object to its admission).

Having concluded that neither of Appellant's Confrontation Clause issues merits relief, we consider Appellant's remaining claim—that "the weight of the evidence was insufficient to warrant a finding of guilt . . . because the Commonwealth failed to present any witness that could testify to the specific analysis that was done." Appellant's brief at 37-38. Stated differently, Appellant contends that, "[b]ecause no testimony was provided by the true analyst or someone who could properly certify the results, no weight can be afforded to the blood results." **Id**. at 38.

Appellant has conflated the issues of sufficiency and weight of the evidence. For example, in his post-sentence motion, Appellant sought an arrest of judgment, the remedy when evidence is insufficient to sustain a conviction, rather than a new trial, which is the relief granted following a successful weight challenge. *See* Post-Sentence Motion, 8/22/19, at unnumbered 11. *See also Commonwealth v. Ruffin*, 463 A.2d 1117, 1118 n.5 (Pa.Super. 1983) ("Appellant's brief confuses the separate and distinct contentions that the jury's verdict was not supported by sufficient evidence and that the verdict was against the weight of the evidence. With respect to the insufficiency claim, the appropriate remedy would be a discharge and dismissal of all charges. Where the verdict is against the weight of the evidence, the proper remedy is a new trial.").

Even if the documents evidencing the time of the blood draw and the BAC revealed by the toxicology report had been improperly admitted, they would be properly considered in assessing evidentiary sufficiency. *See Commonwealth v. Palmer*, 751 A.2d 223, 227 (Pa.Super. 2000) ("In evaluating the sufficiency of the evidence, we do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings were correct." (citations omitted)). Hence, to the extent Appellant is contesting the sufficiency of the evidence, his argument necessarily fails. *See*

- 11 -

*Commonwealth v. Thur*, 906 A.2d 552, 564 (Pa.Super. 2006) (stating that the elements of DUI—highest rate are: "(1) that a person drove, operated or was in actual physical control of a motor vehicle; and (2) that such action was conducted after imbibing enough alcohol that the actor's BAC reached 0.16% within two hours after driving").

To the extent that Appellant is contesting the weight of the evidence to sustain his conviction, the following principles guide our review.

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013).

The trial court addressed Appellant's weight challenge as follows:

[T]he trial court concluded that the blood test results contained in the toxicology report were properly admitted and the testimony of Dr. Cohn sufficiently satisfied [Appellant]'s right to confrontation. As a result, the trial court appropriately considered Dr. Cohn's testimony regarding [Appellant]'s BAC and the information contained in the toxicology report when it concluded that [Appellant]'s BAC at the relevant time was .231 %. As a blood alcohol content of .231 % is well above the threshold of .16% required to find the [Appellant] guilty of the crime of DUI: Highest Rate of Alcohol, in violation of Title 75 §3802(c), the facts are not in dispute and the undersigned committed no abuse of discretion in refusing to grant a new trial on the basis that the verdict was against the weight of the evidence.

Trial Court Opinion, 1/10/20, at 15-16.

Our review of the testimony and exhibits offered at trial reveals no indication that the trial court's failure to conclude that the verdict shocked its conscience was the product of an error of law, was manifestly unreasonable, or was "a result of partiality, prejudice, bias or ill-will." **Clay**, **supra** at 1055 (internal quotation marks omitted). Accordingly, Appellant is entitled to no relief from this Court on his weight-of-the-evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/08/2020